**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

| | |
|---|---|
| TRANSEO S.A.R.L. and PHILIPPE GELBLAT,<br><br>          Plaintiffs,<br><br>          v.<br><br>BESSEMER VENTURE PARTNERS VI L.P., BESSEMER VENTURE PARTNERS VI INSTITUTIONAL L.P., AND BESSEMER VENTURE PARTNERS CO-INVESTMENT L.P.,<br><br>          Defendants. | 11 Civ. 5331 (CS) (PED) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED VERIFIED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................2

I.     PLAINTIFFS HAVE FAILED TO STATE CLAIMS FOR RELIEF................................2

II.    PLAINTIFFS' DERIVATIVE CLAIM SHOULD BE DISMISSED ..............................12

III.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ...........................15

CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Answers Corp. S'holders Litig.*,
C.A. No. 6170-VCN, 2012 WL 1253072 (Del. Ch. Apr. 11, 2012) ..............................4, 5, 12

*Axis Reins. Co. v. HLTH Corp.*,
993 A.2d 1057 (Del. 2010) ............................................................................................8

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) ..........................................................................................13

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004) ...........................................................................................9

*Crescent/Mach I Partners, L.P. v. Turner*,
846 A.2d 963 (Del. Ch. 2000) .....................................................................................3, 4

*eBay Domestic Holdings, Inc. v. Newmark*,
16 A.3d 1 (Del. Ch. 2010) ........................................................................................6, 13

*Gantler v. Stephens*,
C.A. No. 2392-VCP, 2008 WL 401124 (Del. Ch. Feb. 14, 2008) ........................................13

*Lyondell Chemical Co. v. Ryan*,
970 A.2d 235 (Del. 2009) ..............................................................................................5

*Moscato v. Tie Techs., Inc.*,
No. 04 Civ. 2487, 2005 WL 146806 (S.D.N.Y. Jan. 21, 2005) ...........................................8

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ..........................................................................................3, 6

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,
506 A.2d 173 (Del. 1986) ............................................................................................4, 5

*Rohe v. Reliance Training Network, Inc.*,
No. 17992, 2000 WL 1038190 (Del. Ch. July 21, 2000) ....................................................7

*Strassburger v. Earley*,
752 A.2d 557 (Del. Ch 2000) .........................................................................................4

*Thorpe v. CERBCO, Inc.*,
Civ. A. No. 11713, 1993 WL 443406 (Del. Ch. 1993) ........................................................6

*Tooley v. AXA Fin., Inc.*,
No. 18414, 2005 WL 1252378 (Del. Ch. May 13, 2005) ...................................................2, 4

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ............................................................................................2

*In re Tower Air,*
    416 F.3d 229 (3d Cir. 2005)..................................................................12

*In re Veeco Instruments, Inc. Securities Litigation,*
    434 F. Supp. 2d 267 (S.D.N.Y. 2006)..........................................13, 14

## <u>Statutes</u>

Del. Code  Ann. tit. 8, § 141(k) (West 2010)..................................................6

Del. Code. Ann. tit. 8, § 141(c) (West  2010)............................................7, 8

Fed. R. Civ. P. 12(b)(6)......................................................................12

Internal Revenue Code Section 409A...................................................13

Defendants Bessemer Venture Partners VI L.P., Bessemer Venture Partners VI Institutional L.P., Bessemer Venture Partners Co-Investment L.P. (together, "Bessemer"), Deer VI & Co. LLC ("Deer"), Jeremy Levine ("Levine"), Jeffrey Erwin ("Erwin"), Peter Price ("Price") and nominal defendant Neutral Holdings, Inc. ("NHI") (collectively, "Defendants") respectfully submit this Reply memorandum of law in further support of their motion to dismiss the Second Amended Verified Complaint (the "Complaint") of Plaintiffs Transeo S.A.R.L. ("Transeo") and Philippe Gelblat ("Gelblat").

## PRELIMINARY STATEMENT

Only three things are clear from Plaintiffs' opposition. ***First***, Plaintiffs have abandoned several of their claims. Plaintiffs have not opposed dismissal of their breach of fiduciary duty claims that are based on Bessemer's alleged (1) attempt to fund a dividend financed by a loan, (2) payment of a dividend in the form of a promissory note, (3) termination of Laurent Marteau ("Marteau") as NHI's CEO, and (4) transfer of NHI assets from France to the United States. Plaintiffs also have not opposed dismissal of their claim that Bessemer breached Delaware General Corporations Law § 220. In fact, Plaintiffs relegated their discussion of these claims to two brief footnotes, in which they admit that these previously asserted claims provide context only. (Opp. Br. at 11 n. 10; *id*. at 17-18 n. 12). There is no question that these claims should be dismissed. ***Second***, Plaintiffs' opposition does nothing to clarify or address the numerous deficiencies in their remaining claims. Space constraints prohibit Defendants from addressing each of the legal and logical errors underlying Plaintiffs' futile claims and in Plaintiffs' opposition brief, so Defendants have focused on only the most egregious deficits below. ***Third***, Plaintiffs have provided no good reason for dismissing their claims without prejudice, nor could they. Having wasted their last two opportunities to amend, Plaintiffs are not entitled to a third bite at the apple. The Court should dismiss the Complaint in its entirety with prejudice.

## ARGUMENT

## I.      PLAINTIFFS HAVE FAILED TO STATE CLAIMS FOR RELIEF

### *Plaintiffs Lack Standing to Assert a Direct Claim for Breach of Fiduciary Duty Against Bessemer.*  Plaintiffs do not dispute—nor could they—that the test set forth in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), applies to the question whether Plaintiffs' claim for breach of fiduciary duty is plead as a direct or derivative claim.[1]  (Opp. Br. at 9.)  Plaintiffs also agree—as they must—that they have to had suffered harm individually and independently of the corporation or other stockholders, and must be able to prevail "without showing an injury to the corporation," to state a direct claim.  (*Id.*)  Plaintiffs have not done so.

Since the outset of this litigation, Plaintiffs have alleged that Bessemer breached its fiduciary duties as a majority stockholder by (1) attempting to structure a dividend payment financed by a bank loan; (2) paying the promissory-note dividend; (3) terminating Marteau as NHI's President and CEO; (4) transferring NHI assets from France to the United States; and (5) failing to accept the AVG Proposal.  As set forth in Defendants' opening brief, these actions are alleged to affect all NHI stockholders, not just Transeo and Gelblat, by purportedly decreasing the value of NHI.  (*See* Defs. Br. at 11-13.)  Remarkably, Plaintiffs do not appear to dispute this in their opposition.  Plaintiffs instead have resorted to citing new allegations to support their claims.  Plaintiffs now contend, for the first time in their opposition brief, that Transeo suffered harm not also felt by NHI as a result of (1) "being denied its contractual right to have Marteau as its appointed director on the Board and through him to participate in its actions," and  (2) "having its service contract terminated without the contractually required notice."  (Opp. Br. 9.)  Plaintiffs also claim that the issuance of stock options to Erwin and Price inflicted a unique

---

[1]  Plaintiffs imply that Defendants applied a different standard than the *Tooley* test for analyzing whether their claim was direct or derivative.  (*See* Opp. Br. at 10 & n. 9.)  That is false.  (Defs. Br. at 10-11.)

injury upon them (without stating how any alleged dilution in share value impacts only them, and not all NHI stockholders).  (*Id.* at 10.)  None of these actions, however, are alleged in the Complaint as support for its breach of fiduciary duty claim against Bessemer.[2]  Moreover, none of these supposed actions amount to a breach of fiduciary duty, because Bessemer, as the majority stockholder, had no duty to retain Marteau as a board member, maintain Transeo's services contract with NHI, or determine employee compensation.  Finally, Plaintiffs have not alleged any harm—to themselves or the corporation—that resulted from these purported acts. This claim should be dismissed.

### **_Plaintiffs Have Failed to State a Direct Claim for Breach of Fiduciary Duty._**  Plaintiffs

concede that none of Bessemer's alleged actions benefitted Bessemer at their expense.  Instead, Plaintiffs contend that they need only allege that Bessemer's actions conferred a benefit on Bessemer that was not available to the minority stockholders to state a claim for breach of fiduciary duty against a majority stockholder like Bessemer.   (Opp. Br. at 11) (citing *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963 (Del. Ch. 2000)).  Plaintiffs are wrong.

As an initial matter, Plaintiffs misrepresent the law by citing *Crescent*.  Not only that— Plaintiffs **blatantly misquote** the *Crescent* case.  Plaintiffs assert:  "Simply stated, if benefits conferred on a majority stockholder are not available to minority stockholders, this **'suggests that the majority stockholder breached its fiduciary duty.'**  *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 982 (Del. Ch. 2000)."  (Opp. Br. at 11) (emphasis added).  The quote that Plaintiffs attribute to *Crescent* appears nowhere in that decision.  Moreover, the concept conveyed by Plaintiffs' fabricated quote does not even accurately reflect the holding in *Crescent*;

---

[2]   Neither the termination of Transeo's services contract nor the issuance of options to Erwin and Price have been specifically alleged in support of **any** Plaintiffs' claims.  Moreover, Marteau's removal or exclusion from the NHI board is the basis of their breach of contract claim.  As such, it cannot be the basis for a breach of fiduciary duty claim.  *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

indeed, that case is inapposite to the present dispute.  In *Crescent*, the plaintiff minority stockholders sued the corporation's **directors** for breach of fiduciary duty—not its majority stockholder.[3]  Accordingly, *Crescent* sets forth no rule governing the scope of the fiduciary duty that majority stockholders owe to minority stockholders.  Plaintiffs cannot resort to inventing a rule of law because it suits their needs at the moment.

In addition, in *Crescent* and the other cases upon which Plaintiffs rely, it **was** alleged that the board conferred a benefit on the majority stockholder **at the expense of the minority stockholders**.  *See, e.g., Tooley v. AXA Fin., Inc.*, No. 18414, 2005 WL 1252378, at *7 (Del. Ch. May 13, 2005) (minority stockholders had "barely" stated a claim for breach of fiduciary duty in alleging that the directors conferred a benefit on the majority stockholder that "came at the alleged expense of the minority stockholders"); *Crescent*, 846 A.2d at 983 (directors breached their duty of loyalty by "enabl[ing] [the majority stockholder] wrongfully to benefit at the corporation's expense") (quoting *Strassburger v. Earley*, 752 A.2d 557, 581 (Del. Ch 2000)).  Thus, far from undermining Defendants' argument, these cases actually support it.

Plaintiffs also claim that Bessemer breached its fiduciary duty by "disregarding a known duty."  (Opp. Br. at 14-16.)  Specifically, Plaintiffs contend that Bessemer breached its duty, pursuant to *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986), to seek the best price for NHI in failing to give appropriate consideration to the AVG Proposal.  (Opp. Br. at 14-15.)  But Plaintiffs have cited to no case holding or even suggesting that majority stockholders have any duties under *Revlon*.  Nor could they:  the *Revlon* line of cases set forth obligations of **directors**—not shareholders—who have initiated the process of selling a

---

[3]  The two other cases on which Plaintiffs rely are also inapplicable, as both considered the actions of the corporation's directors, not the majority stockholder.  (*See* Opp. Br. at 12-13) (citing *Tooley v. AXA Fin., Inc.*, No. 18414, 2005 WL 1252378 (Del. Ch. May 13, 2005) and *In re Answers Corp. S'holders Litig.*, C.A. No. 6170-VCN, 2012 WL 1253072 (Del. Ch. Apr. 11, 2012)).

corporation.  *See, e.g.*, *In re Answers Corp. S'holders Litig.*, C.A. No. 6170-VCN, 2012 WL 1253072, at *8 (Del. Ch. Apr. 11, 2012) ("Once a **board** has initiated a sales process, *it* has a duty to seek the highest value reasonably available for the company's shareholders . . . *A board* acts in bad faith, if it consciously disregards that duty.") (cited in Opp. Br. at 15) (emphasis added).  Thus, Bessemer disregarded no known duty in connection with the AVG Proposal.

Even assuming majority stockholders have such duties (they do not), no fiduciary duty contemplated under the *Revlon* line of cases had arisen with respect to the AVG Proposal.  It is well settled that the *Revlon* duty to obtain the best price for the sale of a company, and any attendant consideration that must be paid to competing offers, does not attach until the point at which the board of directors "decide[s] to sell," or when "the sale ha[s] become inevitable." *See, e.g.*, *Lyondell Chemical Co. v. Ryan*, 970 A.2d 235, 241 (Del. 2009); *Revlon*, 506 A.2d 173. Here, Plaintiffs cannot point to any affirmative decision by the NHI board (or Bessemer) to sell the company.  Instead, the Plaintiffs rely on mere internal musings of select NHI board members (namely Levine) to support the imposition of the *Revlon* duty.  Such musings are wholly insufficient to give rise to a duty on behalf of Bessemer to examine the AVG Proposal to any extent, much less to the extent contended by Plaintiffs.[4]

Finally, to the extent Plaintiffs continue to contend that Marteau's alleged removal or exclusion from the NHI board constituted a breach of fiduciary duty, that claim fails.  These alleged actions are the basis for Plaintiffs' breach of contract claim.  Delaware law is clear: any actions that underlie a breach of contract claim cannot be used to support a fiduciary duty claim.

---

[4]   For the same reasons, no *Revlon* duty to either accept the AVG Proposal or examine it to the extent advocated by Plaintiffs had arisen for the NHI board of directors.  *See Lyondell*, 970 A.2d at 242 ("The time for action under *Revlon* did not begin until . . . the directors began negotiating a sale of Lyondell.") Thus, the Court should dismiss Plaintiffs' derivative claim against select NHI directors for breach of fiduciary duty to the extent it is premised on a failure to accept or examine the AVG Proposal in depth.

*See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim.  In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous.").

Simply put, the standard is as Defendants articulated:  majority stockholders breach their fiduciary duties to minority stockholders only where the majority stockholder takes action that enriches themselves at the minority stockholders' expense.  *See, e.g., eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 37-38 (Del. Ch. 2010) (citing cases); *Thorpe v. CERBCO, Inc.*, Civ. A. No. 11713, 1993 WL 443406, at *7  (Del. Ch. 1993).  Plaintiffs have failed to allege that Bessemer's purported conduct benefitted Bessemer at their expense, and accordingly this claim should be dismissed.

***Plaintiffs Have Failed to State a Claim for Breach of Contract.***  Plaintiffs' argument that they have stated a claim for breach of contract falls short.  First, it bears repeating that Marteau has not been removed from the NHI board of directors.  But even assuming he has, the claim still fails.  According to Plaintiffs, section 7.1 of the Stockholders' Agreement "completely bar[s] removal of Transeo's appointed director for convenience, any reason or no reason."  (Opp. Br. at 6; *see also id.* at 2 (asserting that section 7.1 "expressly prohibit[s] the removal of a designated director from a board")).  Plaintiffs are wrong.  Section 7.1 merely states that an entity with the right to appoint a director to the NHI board also has the right to cause the stockholders to remove that director; it does not claim to be the ***exclusive*** method for removing a director.  (*See* Compl. Ex. 1 at 12, § 7.1.)  More importantly, this provision does not supplant Delaware law, which explicitly allows for the removal of directors by the holders of a majority of the shares—a point Plaintiffs completely failed to address in their opposition.  *See* Del. Code

Ann. tit. 8, § 141(k) (West 2010); *see also Rohe v. Reliance Training Network, Inc.*, No. 17992, 2000 WL 1038190, at *11 & n. 30 (Del. Ch. July 21, 2000). The provision upon which Plaintiffs so heavily rely simply provides another mechanism for removing a director from the NHI board.[5]

Likewise, Marteau's alleged exclusion from NHI board meetings is not a breach of the agreement. Plaintiffs erroneously contend that section 7.2 of the Stockholders' Agreement "mandat[es] the presence of every director for the conduct of any board meeting." (Opp. Br. at 2.) In fact, that provision merely states that the presence of all directors in person or by proxy constitutes a quorum. (*See* Compl. Ex. 1 at 12, § 7.2.) Plaintiffs also mistakenly rely on the integration clause in the Stockholders' Agreement in claiming that it "destroys Defendants' argument that the Stockholders' Agreement permits Board meetings with fewer than all directors present in person or by proxy or that it was permissible to exclude the Transeo-appointed director from a board meeting," and that it "overrides By Laws § 3.04," which allows for the creation of committees. (Opp. Br. at 7 & n. 7.) The integration clause says only that the terms of the Stockholders' Agreement prevail "in the event of any inconsistency of this Agreement" and the by-laws. There is no inconsistency between a provision of the Stockholders' Agreement that merely defines what constitutes a quorum and a provision of the by-laws that allows for the creation of committees to handle certain board business. Moreover, the integration clause says nothing about superseding Delaware law, which also permits the creation of committees—a fact Plaintiffs' opposition tacitly admits by its silence. *See* Del. Code. Ann. tit. 8, § 141(c) (West

---

[5] Plaintiffs wrongly assert that "Bessemer's manner of removing Gelblat manifests its unequivocal understanding that a director appointed by Bessemer or Transeo under Section 7.1 can be removed only by the party appointing him–which, of course, entirely undercuts Defendants' claim to have the power to remove Marteau as a director." (Opp. Br. at 8 n. 7.) Plaintiffs ignore that Bessemer's removal of Gelblat is consistent with Delaware law, which allows majority stockholders like Bessemer to remove directors.

2010).  Thus, the integration clause is of no help to Plaintiffs.  This claim should be dismissed.[6]

### ***Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails.***  Plaintiffs continue to contend that Marteau's termination as CEO and President of NHI and his exclusion from the board "have rendered Transeo's now-ripe redemption right [under under section 5.1(a) of the Stockholders' Agreement] nugatory."[7]  Again, however, ***Marteau does not need to be a director, officer or even an employee of NHI*** for Transeo to seek to redeem its shares.  Nor is Transeo's right to redemption dependent on any access to documents and information.  Rather, Transeo may seek to redeem its shares "at any time" (provided that a sale of NHI has not been instigated pursuant to section 5.1(b)).  (*See* Compl. Ex. 1 at 9, § 5.1(a).)

Moreover, Marteau's termination as NHI's CEO has ***not*** deprived Transeo of any guaranteed right, because Transeo's right to seek a sale of NHI under section 5.1(b) was never absolute.  To the contrary, it was expressly dependent on Marteau's continued occupation as NHI's CEO.  (*Id.*)  Now that a condition explicitly contemplated by the agreement has come to pass, Transeo asks this Court to ignore it.  Neither the Court nor the doctrine of the implied covenant of good faith and fair dealing can be used to rewrite the agreement in this way.  *Moscato v. Tie Techs., Inc.*, No. 04 Civ. 2487, 2005 WL 146806, at *4 (S.D.N.Y. Jan. 21, 2005).

In fact, Transeo has gotten exactly what it bargained for, and exactly what it was entitled to, under these provisions—nothing more, nothing less.  Indeed, if anyone is attempting to

---

[6]  Plaintiffs' strained interpretation could also have absurd consequences.  For example, if Marteau became severely disabled and was unable to carry out the duties required of a director (including lacking the competence or ability to resign or, as Transeo's sole figurehead, remove himself from the board), the remaining shareholders would have no power to remove him from the NHI board.  The remaining board members would also be unable to hold any board meetings or conduct any business.  Interpretations that could lead to such a bizarre outcome cannot be correct.  *See Axis Reins. Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010) ("[A] court will not adopt the interpretation that leads to unreasonable results").

[7]  It remains a mystery why Gelblat joined Transeo in asserting this claim, as the Complaint contains no allegations regarding any benefits of which Gelblat has been deprived.

deprive a party of the benefits of its bargain, it is Transeo.  Transeo agreed to sell a controlling interest in the Intego companies to Bessemer, for which Transeo (and Marteau) were highly compensated.  Despite selling a controlling interest in the company, Transeo (and Marteau) want to maintain control over it, and are attempting to do so by, *inter alia*, trying to install Marteau as NHI's President and CEO in perpetuity, dictate its day-to-day operations, and mandate its sale to a bidder of their choosing—not to mention bringing this frivolous lawsuit for the sole purpose of harassing and distracting those charged with running the company.  The Court should not countenance such oppressive behavior.

### ***Plaintiffs Have Failed to State a Claim for Unjust Enrichment.***  Plaintiffs' *post hoc*

attempt to plead a claim for unjust enrichment in their opposition is unavailing.  In their brief, Plaintiffs correctly—albeit belatedly—state the basic elements of the claim for unjust enrichment in New York: a benefit bestowed upon defendant at plaintiff's expense.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  Plaintiffs contend that the benefit conferred upon Bessemer was its controlling interest in NHI.  (Opp. Br. at 19.)  Plaintiffs conveniently ignore, however, that Transeo (via Marteau) was highly compensated for the sale of this interest to Bessemer.  Moreover, Bessemer did not get its ownership interest through any of the purported misdeeds set forth in the Complaint.  There has been no unjust enrichment here.[8]

### ***Transeo's Claim for Tortious Interference with Prospective Contractual Advantage Fails.***  As an initial matter, Transeo concedes that Bessemer is not alleged to have acted with

---

[8]  Plaintiffs have also failed adequately to plead this claim.  In their opposition, Plaintiffs identify **paragraph 2** of the Complaint—and only paragraph 2—as support for this claim.  (Opp. Br at 19-20.)  Paragraph 2 neither mentions nor references unjust enrichment.  The unjust enrichment claim appears **195 paragraphs later**, and contains no citation or reference to paragraph 2.  Rather, there is just a general allegation repeating and re-alleging the allegations in paragraphs 1-196.  Plaintiffs are grasping at straws, and the notion that this satisfies their pleading requirements under *Iqbal* and *Twombley* is absurd.

exclusive malice.[9]  Thus, to sustain its claim, Transeo must sufficiently aver that Bessemer used means that are dishonest, unfair or improper to deprive Transeo of a prospective contractual advantage.  Transeo must also allege facts sufficient to show actual business relations between Transeo and a third party with which Bessemer interfered.  Transeo has made no such showing.

*First*, Transeo contends for the first time in its opposition brief that Bessemer's purported "violations of a contract, the removal or exclusion of a properly constituted member of the board and falsification of documents" constitute dishonest, unfair and improper means.[10] (Opp. Br. at 20.)  As an initial matter, Transeo's suggestion that the supposed falsification of documents constitutes dishonest, unfair or improper means of depriving Transeo with a prospective contractual advantage is curious, as Bessemer is not alleged to have falsified any documents and Transeo has asserted this claim against Bessemer only.  (*See* Compl. ¶ 38.)  Equally baffling is Transeo's reference to a conversation Erwin allegedly had with AVG to imply that Erwin took steps to interfere with Marteau's prospective employment with AVG as, again, Transeo asserted this claim against Bessemer only, not Erwin.  (*See id*; Opp. Br. at 21.)  Putting that aside, there is no alleged (or even conceivable) connection between Marteau's supposed removal or exclusion from the board, or any purported "falsification of documents," and an attempt to deprive Marteau or Transeo of a prospective contractual advantage.  (*See* Opp. at 20.)  Transeo's attempt to link them in the context of their opposition brief only demonstrates the poverty of its position.

*Second*, Transeo has failed to allege sufficient business relations between itself and any

---

[9]   Transeo wrongly states that Defendants misapprehended the standard by contending that an allegation of exclusive malice is required.  (Opp. Br. at 20.)  Defendants have not stated or even implied that the failure to plead exclusive malice is dispositive of this claim.  (*See* Defs. Br. at 20-22.)

[10]   In opposing the motion, Transeo failed to address, and appears to have abandoned, its previous theory that Bessemer's rejection of the AVG Proposal and Marteau's termination as NHI's CEO were intended to deprive Marteau of a prospective contractual advantage.  For good reason—as set forth in Defendants' opening brief, neither are alleged to have been undertaken with exclusive malice or amount to dishonest, unfair or improper means.  (*See* Defs. Br. at 23.)

third party with which Bessemer purportedly interfered.  A vague reference to "the continued involvement of the NHI/Intego management team—headed by Marteau" in any company resulting from the sale of NHI to AVG falls far short of establishing an existing relationship between AVG and Transeo.[11]  And, of course, there can be no current business relationship between Marteau and/or Transeo and an unidentifiable third party to whom NHI might be sold if Transeo were to invoke its right to a sale of the Company under section 5.1(b)—a point Transeo has simply ignored in its opposition.   This claim fails and should be dismissed.

### *Plaintiffs' Claim for Aiding and Abetting Breach of Fiduciary Duty Fails.*  Plaintiffs'

opposition brief does nothing to salvage their claim for aiding and abetting breaches of fiduciary duty.  *First*, no primary breaches have been established.  In opposing the motion to dismiss, Plaintiffs cite only to some unspecified "violations of law" as breaches of fiduciary duty that were aided and abetted here.  As set forth in Defendants' opening brief, however, Plaintiffs' allegations of illegality are far too conclusory and unspecified to sustain a claim.  (*See* Defs. Br. at 33-35.)  Plaintiffs' other claims of breach suffer from similar defects.  (*Id.*)  *Second*, Plaintiffs have failed, yet again, to specify which breaches were allegedly aided and abetted by whom, much less the knowledge of, or substantial assistance given by, the alleged aiders-and-abettors. Instead, Plaintiffs simply (and unhelpfully) direct Defendants and this Court to the myriad allegations in the Complaint.  (Opp. Br. at 22.)  This is insufficient to state a claim.

### *Plaintiffs' Claim for "Other Blatant Tortious Conduct" Fails.*  Plaintiffs' opposition

also fails to rescue their unsustainable (and non-existent) claim for "other blatant tortious

---

[11]   Contrary to Transeo's contention, the references to Marteau as the person allegedly deprived of a prospective contractual advantage are no "scrivener's error."  (*See* Opp. Br. at 21 & n. 15.)  Plaintiffs have never indicated that AVG or another third party knew what Transeo is, much less that they intended to have a working relationship with Transeo upon buying NHI.  As explicitly acknowledged in the Complaint, only Marteau stood to gain employment with any future entities created upon the sale of NHI.

11

conduct."  Just as there is no recognized claim of "other blatant tortious conduct," there is no legally cognizable "claim sound[ing] in tort."  Moreover, Plaintiffs' reference to Official Form 12 is unavailing.  Unlike Plaintiffs' amorphous claim, Official Form 12 specifically identifies the tort claim being asserted—negligence—and sets forth allegations that may be used when the responsible party is unknown.  This claim should be dismissed.

## II.      PLAINTIFFS' DERIVATIVE CLAIM SHOULD BE DISMISSED

The Court has three separate and independent grounds for dismissing Plaintiffs' derivative claims: (1) failure to state claims for derivative relief; (2) failure to demonstrate demand futility; and (3) Plaintiffs' inadequacy to serve as shareholder representatives.

***Plaintiffs Have Failed to State a Claim for Derivative Relief.***  Plaintiffs' derivative claim should be dismissed for failure to state a claim.  As an initial matter, Plaintiffs' opposition completely ignores, and thus fails to oppose, this aspect of Defendants' motion.  The claim should be dismissed for this reason alone.  In any event, Plaintiffs have failed to allege what fiduciary duties Bessemer and Deer owed to NHI, much less show how Bessemer's alleged action breached such duties.  Moreover, Plaintiffs' allegations regarding the board's rejection of the AVG Proposal and the exclusion of Marteau from the board do not constitute a breach of the duty of loyalty, or bad faith or illegal conduct—the only actions for which the board members named here can be held liable in light of NHI's exculpatory provision.[12]  Finally, Plaintiffs' allegations of illegality by Erwin are far too conclusory and unspecified to sustain a claim.  (*See*

---

[12]   Plaintiffs appear to suggest that the Court should disregard NHI's exculpatory provision here because the invocation of such provisions is an affirmative defense and is generally not the basis of dismissal under Rule 12(b)(6).   (Opp. Br. at 26.)  The case they cite for this proposition, however, did not hold that an exculpatory provision cannot be the basis for a motion to dismiss.  (*See id.* (citing *In re Tower Air*, 416 F.3d 229, 242 (3d Cir. 2005)).   This is yet another example of Plaintiffs inventing law to suit their purposes.  Moreover, exculpatory provisions were considered in deciding motions to dismiss in some of the very cases Plaintiffs cite and upon which they rely.  *See, e.g.*, *Answers*, 2012 WL 1253072, at *7.

Compl. ¶¶ 249-50 (citing unspecified "French laws" and the 73-subpart, nine-page long Internal Revenue Code Section 409A as having been violated)).

### ***Plaintiffs Have Failed to Demonstrate Demand Futility.***   The Court can also dismiss Plaintiffs' derivative claim on the ground that Plaintiffs have failed to establish demand futility.[13] First, Plaintiffs have not shown that a majority—or even half—of the NHI board is so dependent on Bessemer or interested in the challenged transactions to justify excusing demand.  Regarding Erwin, Plaintiffs rely only on conjecture and speculation about the reasons for his employment at NHI and his treatment of the AVG Proposal, and not any particularized facts, to create doubt about his impartiality.  That is not sufficient.  Moreover, a vague allegation that Erwin had a prior relationship with Bessemer falls far short of establishing that he is under the control of, or beholden to, it.  *See Beam v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004).  The fact that Erwin is NHI's current CEO is also of no moment.  Plaintiffs wrongly claim that a current CEO of corporate entity is *per se* not disinterested; citing *In re Veeco Instruments, Inc. Securities Litigation*, 434 F. Supp. 2d 267, 275 (S.D.N.Y. 2006).  (*See* Opp. Br. at 27.)  Plaintiffs' reliance on *Veeco* is misplaced,[14] however, as the disinterested director in that case had been employed by the company for more than forty years and his job there had been his main source of income.

---

[13]   Plaintiffs inexplicably launch into a seemingly unrelated discussion of the entire fairness test at the outset of their demand futility discussion.  (*See* Opp. Br. at 25.)  To the extent Plaintiffs believe the Court should apply that test rather than the business judgment rule in analyzing the board's consideration of the AVG Proposal or Marteau's exclusion from board business, this test has no application to the demand futility analysis.  In fact, the entire fairness test has no application in this case at all, as there has been no allegation that NHI's directors stood on both sides of, or expected to personally benefit in the sense of self-dealing from, either transaction.  *See, e.g.*, *eBay*, 16 A.3d at 37-38.  Although Plaintiffs suggest that Erwin's appointment as NHI's CEO and to the NHI board, the issuance of stock options to him, and Levine's employment at Bessemer are examples of self-dealing, thus triggering the application of the entire fairness test, they are wrong.  In any event, none of these allegations have been cited as the basis for any claims alleged here.

[14]   *Gantler v. Stephens*, C.A. No. 2392-VCP, 2008 WL 401124 (Del. Ch. Feb. 14, 2008) is also inapposite, because Erwin is neither currently employed by Bessemer nor has any alleged future employment prospects there.  (*See* Opp. Br. at 27.)

13

*Veeco*, 434 F. Supp. 2d at 275.  By contrast, Erwin has worked at NHI for just a little over one year.  The director at issue in *Veeco* also faced a substantial likelihood of personal liability in a pending securities fraud class action.  *Id.*  Erwin faces no such likelihood of personal liability here.  (*See* Defs. Br. at 29.)

With respect to Levine, his mere employment at Bessemer, coupled with a blog post that does not identify, and that Plaintiffs can only speculate refers to, Marteau does not create a reasonable doubt about his independence or disinterestedness.  Finally, Plaintiffs have raised no doubts about either Marteau's or John Goldsmith's independence or disinterestedness.

Plaintiffs' arguments with respect to the application of the business judgment rule and the exculpatory provision in NHI's Certificate of Incorporation also fall short.  (*See* Opp. Br. at 31-32.)  Plaintiffs' claim that an exculpatory provision "applies only to monetary damages, and would not foreclose liability for equitable relief" is irrelevant, since Plaintiffs are seeking monetary damages for each and every one of their claims.  (*See* Compl. ¶¶ 176, 183, 191, 196, 200, 209, 221, 225 & F.)  Moreover, while it may be true that exculpatory provisions do not foreclose liability for bad faith conduct, no such conduct has been alleged here.  (*See* Defs. Br. at 31-32.)  Put simply, Plaintiffs have alleged no facts sufficient to either rebut the presumption that the board exercised sound business judgment, or demonstrate that the board committed acts unprotected from liability under NHI's exculpatory provision, in its consideration of the AVG Proposal and in excluding Marteau from BOD business.  Accordingly, and because Plaintiffs have failed to establish that both Erwin and Levine lack independence or disinterestedness, demand futility has not been established with respect to these alleged actions.

***Plaintiffs Are Not Fair and Adequate Shareholder Representatives.***  Lastly, the derivative claim can be dismissed because neither Plaintiffs' Complaint nor their opposition

14

demonstrate that they are fair and adequate representatives for NHI's shareholders.  In focusing solely on the claims they have asserted against Bessemer, they ignore that Plaintiffs also purport to bring claims **on Bessemer's behalf** against other defendants.  Plaintiffs cannot possibly pursue those claims vigorously in light of the fact that they also have claims pending against Bessemer.

## III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

It is beyond dispute that Plaintiffs' first four claims (for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of Delaware General Corporations Law) should be dismissed with prejudice.  Plaintiffs have already been afforded—and squandered—numerous opportunities to correct the deficiencies with these claims.  They should not get another bite at the apple.

The circumstances of this case also dictate that Plaintiffs' remaining claims be dismissed with prejudice.  Plaintiffs have already amended their Complaint twice.  After being informed by the Defendants (and warned by the Court, *see* Ormond Decl. Ex. C) about the myriad defects with the claims asserted in the First Amended Complaint, Plaintiffs then had **four months** to draft yet another amended complaint.  Plaintiffs chose not to use that time to correct the fatal deficiencies in their pleading.  Quite the contrary—Plaintiffs not only retained all of their existing deficient claims in the Second Amended Complaint, but also asserted a host of additional unsustainable claims, including a claim that does not even exist.  Worse yet, Plaintiffs did not even oppose Defendants' motion to dismiss several of their claims—demonstrating that these claims had no business being asserted in the first place.  As shown by their past conduct, Plaintiffs will not use any further chances to amend in good faith; rather, they will use the opportunity to further harass the Defendants.  Enough is enough.  The Court should dismiss Plaintiffs' claims with prejudice.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the memorandum of law and supporting documents submitted in support of their motion to dismiss, Defendants Bessemer, Deer, Levine, Erwin, and Price, and Nominal Defendant NHI, respectfully request that the Court dismiss the Complaint in its entirety with prejudice, together with such other and further relief as this Court deems just and proper.

Dated:  July 27, 2012

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By *Hilary R. Ormond*

Michael B. Carlinsky
(michaelcarlinsky@quinnemanuel.com)
Hilary R. Ormond
(hilaryormond@quinnemanuel.com)
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849–7000

*Attorneys for Defendants*
Bessemer Venture Partners VI L.P., Bessemer Venture Partners VI Institutional L.P., Bessemer Venture Partners Co-Investment L.P., Deer VI & Co., Jeremy Levine, Jeffrey Erwin and Peter Price

*Attorneys for Nominal Defendant*
Neutral Holdings, Inc.

16