**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)**

| | |
|---|---|
| TRANSEO S.A.R.L. AND PHILIPPE GELBLAT, | |
| Plaintiffs, | |
| v. | |
| BESSEMER VENTURE PARTNERS VI L.P., BESSEMER VENTURE PARTNERS VI INSTITUTIONAL L.P., AND BESSEMER VENTURE PARTNERS CO-INVESTMENT L.P., ET AL. | 11 CV 5331 (CS) (PED) |
| Defendants, | |
| and | |
| NEUTRAL HOLDINGS, INC., | |
| Nominal Defendant and Counterclaim Plaintiff. | |

**ANSWER AND COUNTERCLAIMS TO SECOND**
**AMENDED VERIFIED COMPLAINT**

Defendants Bessemer Venture Partners VI L.P., Bessemer Venture Partners VI Institutional L.P., and Bessemer Venture Partners Co-Investment L.P. (collectively, "Bessemer"), Deer VI & Co. LLC ("Deer & Co."), Mr. Jeremy Levine ("Levine"), Mr. Jeffrey Erwin ("Erwin"), and Mr. Peter Price ("Price"), by and through undersigned counsel, as and for their Answer to the Plaintiffs' Second Amended Verified Complaint, and Counterclaim Plaintiffs Neutral Holdings, Inc. and Counterclaimants Intego SA and Intego, Inc., by and through undersigned counsel, as and for their Counterclaims against Transeo S.A.R.L., allege and plead as follows:

**JURISDICTION & VENUE**

1.      Denied.

1

## SUMMARY OF CLAIMS

2.      Denied.

3.      Denied.

4.      Denied.

5.      Admit that this Court has jurisdiction over this matter.  Admit that Deer & Co. is a Delaware limited liability company.  Admit that Erwin and Price are both residents of the State of Washington.  Admit that nominal defendant NHI is a corporation formed and existing under the laws of the State of Delaware.  Otherwise denied.

6.      Admitted.

7.      Admitted.

## PARTIES

8.      On information and belief, admitted.

9.      On information and belief, admit that Gelblat is a citizen of France residing in Switzerland.  Admit that Gelblat served as a director of NHI.  Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 9.

10.     Admit that Bessemer maintains one of its offices at 1865 Palmer Avenue, Suite 104, Larchmont, New York 10538.  Otherwise denied.

11.     Admitted.

12.     Admitted.

13.     Admit that Jeffrey Erwin is President, Chief Executive Officer and a director of NHI and the Intego Companies.  Admit that Jeffrey Erwin is a resident of the State of Washington.  Otherwise denied.

14.     Admitted.

15.     Admitted.

## FACTUAL BACKGROUND

16.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16.

17.     Admitted.

18.     Admit that the shares of Intego SA were transferred to NHI.  Admit that Bessemer is the majority stockholder of NHI and that pursuant to the SPA, Bessemer received slightly less than 85% of the outstanding shares of NHI.  Admit that on an undiluted basis and without accounting for unexercised stock option grants, Bessemer currently owns slightly less than 85% of the outstanding shares of NHI.  On information and belief, admit that on an undiluted basis and without accounting for unexercised stock option grants, Transeo owns slightly less than 15% of NHI's shares and that Gelblat owns or controls less than 1% of NHI's shares. Otherwise denied.

19.     Admitted.

20.     Denied.  Refer to the full text of the Stockholders' Agreement for the contents thereof.

21.     Denied.  Refer to the full text of the Stockholders' Agreement for the contents thereof.

22.     Admit that Marteau was appointed President and Chief Executive Officer of NHI.  Admit that Marteau held the title of Chief Executive Officer of Intego SA.  Otherwise denied.

23.     Admit that Paragraph 23 correctly quotes a portion of Section 5.1(b) of the Stockholders' Agreement; refer to the full text of the Stockholders' Agreement for the  contents thereof.

24.     Denied.  Refer to the full text of the Stockholders' Agreement for the contents thereof.

25.     Denied.  Refer to Section 5.1(a) and (b) of the Stockholders' Agreement for the full contents thereof.

26.     Denied.  Refer to the full text of the Stockholders' Agreement for the contents thereof.

27.     Admitted.

28.     On information and belief, admitted.

29.     On information and belief, admitted.

30.     Admitted.  Refer to the full text of the Stockholders' Agreement for the contents thereof.

31.     Denied.  Refer to the full text of the Stockholders' Agreement for the contents thereof.

32.     Admitted.

33.     Admit that Frost & Sullivan named Intego as the Global Mac Endpoint Security Entrepreneurial Company of the year for 2010.  Otherwise denied.

34.     Admit that Bessemer approached SVB to discuss debt financing options. Otherwise denied.

35.     Denied

36.     Denied.

37.     Denied.

38.     Denied.

39.      Admit that a partner in Bessemer Venture Partners serves, in his individual capacity, as a director of SVB.  Otherwise denied.

40.      Admit that SVB forwarded a non-binding term sheet addressed to Bessemer on November 3, 2010.  Otherwise denied.

41.      Denied.

42.      Deny knowledge or information sufficient to form a belief as to Marteau's state of mind.  Otherwise denied.

43.      Deny knowledge or information sufficient to form a belief as to the truth of the allegation set forth in Paragraph 43.

44.      Deny knowledge or information sufficient to form a belief as to Marteau's state of mind.  Otherwise denied.

45.      Denied.

46.      Denied.

47.      Admit that NHI made a distribution to the owners of NHI shares on December 28, 2010.  Admit that a portion of that distribution was characterized as a dividend.  Otherwise denied.

48.      Denied.

49.      Denied.

50.      Denied.

51.      Denied.

52.      Admit that Intego is listed in Bessemer's "Trusted Internet" category of companies.  Admit that Intego is identified as having Europe as its "geography." Aver that two

other "Trusted Internet" companies are identified as having their geography in Israel, and the remainder as having their geography in North America.   Otherwise denied.

53.     Admit that Bessemer Venture Partners does not maintain an office in Europe. Aver that Bessemer Venture Partners has an office in Israel and two offices in India.  Otherwise denied.

54.     Refer to the full text of Mr. Levine's August 14, 2005 blog post for the contents thereof.  Otherwise denied.

55.     Refer to the full text of Mr. Levine's April 20, 2011 blog post for the contents thereof.  Otherwise, denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Admit that AVG Technologies N.V., a Dutch corporation and its affiliates, approached NHI in 2009 about the possible sale of NHI to AVG.  Admit that NHI entered into discussions with AVG.  Otherwise denied.

68.     Denied.

69.     Admit that AVG sent a letter to NHI dated February 28, 2011 and that AVG attached to that letter a non-binding letter of intent; further refer to the February 28, 2011 letter and letter of intent for the full contents thereof.  Otherwise denied.

70.     Admit that AVG sent a letter to NHI dated February 28, 2011 and that AVG attached to that letter a non-binding letter of intent; further refer to the February 28, 2011 letter and letter of intent for the full contents thereof.  Otherwise denied.

71.     Admit that AVG sent a letter to NHI dated February 28, 2011 and that AVG attached to that letter a non-binding letter of intent; further refer to the February 28, 2011 letter and letter of intent for the full contents thereof.  Otherwise denied.

72.     Admit that AVG sent a letter to NHI dated February 28, 2011 and that AVG attached to that letter a non-binding letter of intent; further refer to the February 28, 2011 letter and letter of intent for the full contents thereof.  Otherwise denied.

73.     Admit that AVG sent a letter to NHI dated February 28, 2011 and that AVG attached to that letter a non-binding letter of intent; further refer to the February 28, 2011 letter and letter of intent for the full contents thereof.  Otherwise denied.

74.     Admit that as of February 28, 2011, the NHI board of directors consisted of Marteau (as Transeo's appointee), Gelblat and Levine (both appointed solely by Bessemer) and Goldsmith (appointed by Bessemer and approved by the remaining members of the NHI board of directors).  Otherwise denied.

75.     Admit that Bessemer owned or controlled a majority of the voting shares of NHI stock.  Otherwise denied.

76.    Admit that Bessemer owed fiduciary duties to the minority stockholders of NHI. Otherwise denied.

77.    Admit that NHI was not publicly traded.  Admit that Bessemer owed fiduciary duties to the minority stockholders of NHI.  Otherwise denied.

78.    Admitted.

79.    On information and belief, admit that Marteau and Gelblat favored the AVG offer.  Otherwise denied.

80.    Admit that Gelblat was removed as a director of NHI.  Otherwise denied.

81.    Admit that Erwin was duly elected to the NHI board of directors to replace Gelblat.  Admit that Mr. Erwin was at the time of his election under consideration for appointment as CEO and President of NHI.  Otherwise denied.

82.    Denied.

83.    Denied.

84.    Admit that Erwin does not speak the French language.

85.    Denied.

86.    Admit that the NHI board of directors terminated Marteau's services as President and Chief Executive Officer of NHI and Transeo's consulting and management services contract with NHI and that such actions were ratified at a special meeting of the NHI board of directors held on March 1, 2011.  Otherwise denied.

87.    Denied.

88.    Denied.

89.    Denied.

90.    Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Admit that Mr. Levine drafted an email dated February 24, 2011 and refer to that email for the full contents thereof.  Otherwise denied.

97.     Admit that Mr. Goldsmith drafted an email dated February 26, 2011 and refer to that email for the full content thereof.  Otherwise denied.

98.     Admit that discussion of the AVG offer was included in the agenda for the March 1, 2011 NHI board of directors meeting.  Otherwise denied.

99.     Admit that at the NHI board of directors meeting on March 1, 2011, Mr. Erwin was appointed to be President and Chief Executive Officer.  Further admit that the NHI board of directors voted to reject the AVG Offer at that time because it was inadequate from a financial point of view.  Otherwise denied.

100.    Denied.

101.    Denied.

102.    Admit that the potential for further conversations with AVG was discussed at the March 1, 2011 meeting.  Otherwise denied.

103.    Admit that the NHI board of directors discussed the creation of a committee of the board which would be tasked with further consideration of discussions with AVG. Otherwise denied.

104.     Admit that Marteau requested that he be a member of any such committee. Otherwise denied.

105.     Denied.

106.     Denied.

107.     Denied.

108.     Denied.

109.     Denied.

110.     Denied.

111.     Denied.

112.     Denied.

113.     Admitted.

114.     Admit that Marteau has brought an action in France asserting wrongful termination.  Otherwise denied.

115.     Admit that the NHI board of directors did not execute a term sheet with AVG. Otherwise denied.

116.     Deny knowledge or information sufficient to admit or deny that AVG was a company with which Intego had dealt in the past.  Otherwise denied.

117.     Denied.

118.     Denied.

119.     Denied.

120.     Denied.

121.     Denied.  Defendants reserve their rights to move to strike or otherwise preclude further reference to this scandalous allegation.

122.    Admit that Marteau requested that the NHI board retain financial advisors in connection with its consideration of the AVG offer.  Admit that the NHI board of directors elected not to retain financial advisors in connection with its consideration of the AVG offer but aver that the retention of outside financial advisors was not required as the members of the NHI board of directors had the requisite financial and transactional knowledge and experience to assess the AVG offer.  Further admit that Mr. Goldsmith drafted an email to the members of the NHI board of directors dated February 24, 2011 and refer to that email for the full contents thereof.  Otherwise denied.

123.    Admit that Bessemer owed a fiduciary duty to the minority stockholders of NHI.  Otherwise denied.

124.    Admit that the NHI board of directors owed a fiduciary duty to the stockholders of NHI.  Otherwise denied.

125.    Denied.

126.    Deny knowledge or information sufficient to form a belief as to what Gelblat was informed.  Otherwise denied.

127.    Denied.

128.    Denied.

129.    Admit that Transeo purported to demand an inspection of NHI's books and records under Section 220(c) of the Delaware General Corporation Law by letter dated June 20, 2011.  Otherwise denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.     Admit that Transeo sent a letter to NHI dated June 30, 2011, and refer to the June 30, 2011 letter for the full contents thereof.

134.     Admit that NHI did not respond to the June 30, 2011 letter.

135.     Paragraph 135 sets forth a conclusion of law to which no response is required. Otherwise denied.

136.     Denied.

137.     Admit that Mr. Erwin sent a letter and annexed agenda dated July 14, 2011, and refer to the letter and annexed agenda for the full contents thereof.

138.     Admit that Mr. Erwin sent a letter and annexed agenda dated July 14, 2011, and refer to the letter and annexed agenda for the full contents thereof.

139.     Admit that Paragraph 139 correctly quotes Section 2.04 of the NHI By-Laws, and refer to such By-Laws for the full contents thereof.

140.     Admit that the Special Meeting Notice & Agenda did not identify which three members of the board of directors had requested the Special Meeting.

141.     Admit that Jeffrey Erwin, Jeremy Levine, and John Goldsmith were the three members of the board of directors that requested the Special Meeting.  Admit that Jeffrey Erwin and Jeremy Levine were the two directors appointed by Bessemer, and that John Goldsmith was nominated by Bessemer and approved by the remaining board members of NHI.

142.     Admitted.

143.     Admit that an attorney retained by NHI was present at the August 1, 2011 Special Meeting and served as acting secretary to record the minutes of the Special Meeting. Otherwise denied.

144.     Denied.

145.    Denied.

146.    Denied.

147.    Admitted.

148.    Admitted.

149.    Denied.

150.    Admit that the appointment of Peter Price as chief financial officer and secretary was discussed at the August 1, 2011 meeting.  Otherwise denied.

151.    Admit that Mr. Price has served as an officer of one other Bessemer portfolio company.  Otherwise denied.

152.    Admitted.

153.    Denied.

154.    Deny knowledge or information sufficient to admit or deny the knowledge of the other members of the NHI board of directors.

155.    Denied.

156.    Denied.

157.    Admit that Agenda item number 6, "Consider approving amendment to 2007 Stock Option Plan," was addressed at the August 1, 2011 meeting.  Otherwise denied.

158.    Admitted.

159.    Admit that Marteau voted against a proposal to increase NHI's number of authorized shares at the August 1, 2011 meeting.  Deny knowledge or information sufficient to form a belief as to his reasons for doing so.  Refer to Section 6.1 of the Stockholders' Agreement for the full contents thereof.  Otherwise denied.

160.    Denied.

161.     Denied.

162.     Admit that agenda item number 9, "Update on AVG discussions," was discussed by Mr. Erwin at the August 1, 2011 board meeting.  Otherwise denied.

163.     Denied.

164.     Admit that Marteau was asked to resign from the NHI board of directors. Otherwise denied.

165.     Refer to the Stockholders' Agreement for the full contents thereof.  Otherwise denied.

166.     Admit that at their August 1, 2011 meeting, the board of directors of NHI formed a special committee to address certain matters coming before the board.  Further admit that Marteau did not voluntarily resign.  Otherwise denied.

167.     Denied.

168.     Admit that at the August 1, 2011 meeting of the NHI board of directors, a special committee was properly created, and that after the August 1, 2011 meeting of the NHI board of directors, that special committee met and conducted business.  Otherwise denied.

169.     Denied.

170.     Denied.

171.     Denied.

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (Transeo and Gelblat against Bessemer)

172.     Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 171 above as if fully set forth herein.

173.     The allegations in Paragraph 173 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

174.     The allegations in Paragraph 174 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

175.     The allegations in Paragraph 175 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

176.     The allegations in Paragraph 176 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
### (Transeo and Gelblat against Bessemer)

177.     Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 176 above as if fully set forth herein.

178.     Admit that the Stockholders' Agreement gives Transeo the right to nominate one member to the board of directors, as long as Transeo (1) remains a Major Stockholder (as defined in the Stockholders' Agreement) and (2) that member is Laurent Marteau.  Otherwise refer to the Stockholders' Agreement for the full contents thereof.

179.     Denied.

180.     Denied.

181.     Admit that the scheduled April 1, 2011 meeting of the NHI board of directors was cancelled.  Otherwise denied.

182.     Denied.

183.     Denied.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Transeo and Gelblat against Bessemer)

184.     Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 183 above as if fully set forth herein.

185.     The allegations in Paragraph 185 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

186.     The allegations in Paragraph 186 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

187.     The allegations in Paragraph 187 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

188.     The allegations in Paragraph 188 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

189.     The allegations in Paragraph 189 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

190.     The allegations in Paragraph 190 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

191.     The allegations in Paragraph 191 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

## FOURTH CAUSE OF ACTION
## BREACH OF DELAWARE GENERAL CORPORATION LAW
### (Transeo against Bessemer)

192.     Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 191 above as if fully set forth herein.

193.     The allegations in Paragraph 193 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

194.     The allegations in Paragraph 194 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

195.     The allegations in Paragraph 195 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

196.     The allegations in Paragraph 196 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT UNDER NEW YORK LA W
### (Transeo and Gelblat against Bessemer)

197.     Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 196 above as if fully set forth herein.

198.    The allegations in Paragraph 198 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

199.    The allegations in Paragraph 199 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

200.    The allegations in Paragraph 200 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

## SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL ADVANTAGE
### (Transeo against Bessemer)

201.    Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 200 above as if fully set forth herein.

202.    The allegations in Paragraph 202 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

203.    The allegations in Paragraph 203 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

204.    The allegations in Paragraph 204 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

205.    The allegations in Paragraph 205 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

206.    The allegations in Paragraph 206 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

207.    The allegations in Paragraph 207 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

208.    The allegations in Paragraph 208 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

209.    The allegations in Paragraph 209 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

### SEVENTH CAUSE OF ACTION
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Transeo and Gelblat against Levine, Erwin, Price and Bessemer)

210.    Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 209 above as if fully set forth herein.

211.    Admit that the Stockholders' Agreement gave BVP the right to nominate two members to the board of directors of NHI.  Otherwise denied.

212.    Admit that BVP nominated Jeffrey Erwin and Jeremy Levine to the board of directors of NHI.  Otherwise denied.

213.    Denied.

214.    Denied.

215.    Denied.

216.    Denied.

217.    Admit that at the March 1, 2011 meeting of NHI's board of directors, the NHI board acted to remove Marteau as President and Chief Executive Officer of NHI.   Otherwise denied.

218.    Denied.

219.    Denied.

220.    Denied.

221.    Denied.

**EIGHTH CAUSE OF ACTION**
**OTHER BLATANT TORTIOUS MISCONDUCT**
**CONCERNING NHI AND ITS SUBSIDIARIES**
**(Transeo and Gelblat against Erwin and Price)**

222.    Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 221 above as if fully set forth herein.

223.    The allegations in Paragraph 223 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

224.    The allegations in Paragraph 224 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

225.    The allegations in Paragraph 225 relate solely to causes of action that were dismissed pursuant to the Order and Opinion entered March 29, 2013.  Accordingly, no response to this Paragraph is required.

## NINTH CAUSE OF ACTION
## (TRANSEO AND GELBLAT, IN THE NAME AND FOR THE BENEFIT OF NHI, AGAINST DERIVATIVE DEFENDANTS)

226.      Defendants repeat and incorporate the admissions and denials of paragraphs 1 through 225 above as if fully set forth herein.

227.      Admitted.

228.      Admit that Transeo is and has been a stockholder of NHI.  Admit that on an undiluted basis and without accounting for unexercised stock option grants, Transeo currently owns slightly less than 15% of NHI's shares.

229.      Admit that Gelblat is and has been a stockholder of NHI.  On information and belief, admit that Gelblat owns less that 1% of the shares of NHI.  Admit that Gelblat was a Bessemer-nominated director of NHI until he was removed in February 2011.

230.      Admit that Bessemer Venture Partners VI L.P., Bessemer Venture Partners VI Institutional, L.P. and Bessemer Venture Partners Co-Investment L.P. are limited partnerships formed and existing under the laws of the State of Delaware. Admit that on an undiluted basis and without accounting for unexercised stock option grants, Bessemer Venture Partners VI L.P., Bessemer Venture Partners VI Institutional, L.P. and Bessemer Venture Partners Co-Investment L.P together own 83.5% of the shares of NHI.

231.      Admit that Deer & Co. is the general partner of Bessemer Venture Partners VI L.P., Bessemer Venture Partners VI Institutional, L.P. and Bessemer Venture Partners Co-Investment L.P.

232.      Admitted.

233.      Admit that Bessemer, directly or indirectly, controls approximately 83.5% of the shares of NHI.  Otherwise state that Paragraph 233 sets forth a conclusion of law to which no response is required.

21

234.     Admitted.

235.     Admitted.

236.     Admitted.

237.     Admitted.

238.     Admit that Mr. Levine drafted an email dated February 24, 2011 and refer to that email for the full contents thereof.  Otherwise denied.

239.     Admit that Mr. Goldsmith drafted an email dated February 26, 2011 and refer to that email for the full contents thereof.  Otherwise denied.

240.     Denied.

241.     Denied.

242.     Denied.

243.     Denied.

244.     Denied.

245.     Denied.

246.     Denied.

247.     Denied.

248.     Denied.

249.     Denied.

250.     Denied.

251.     Denied.

252.     Denied.

253.     Denied.

254.     Denied.

255.    Denied.

256.    Denied.

## GENERAL DENIAL

257.    Except as expressly admitted herein, Defendants deny each and every allegation in the Second Amended Complaint.

## AFFIRMATIVE DEFENSES

By alleging the Affirmative Defenses set forth below, Defendants do not agree or concede that they bear the burden of proof or burden of persuasion any of these issues, whether in whole or in part.

## FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint and the allegations thereof are uncertain, vague, and ambiguous.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because Defendants at all times acted in good faith and did not directly or indirectly perform any act whatsoever that would constitute a violation of any right of Plaintiffs or any duty owed to Plaintiffs.

## THIRD AFFIRMATIVE DEFENSE

No grounds exist for injunctive relief because, among other reasons, there is no ongoing allegedly wrongful conduct to enjoin.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are or may be barred or limited, in whole or in part, by the equitable doctrines of unclean hands, release, estoppel, laches, waiver, and governing standards of equity and good conscience, and further because the relief they seek would result in unjust enrichment.

## FIFTH AFFIRMATIVE DEFENSE

Defendants have insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses. Defendants reserve the right to assert additional defenses if discovery indicates this would be appropriate.

## Counterclaims

Nominal Defendant and Counterclaim Plaintiff NHI, Intego SA, and Intego, Inc. by undersigned counsel, hereby sue Plaintiff Transeo and in support state and allege the following:

## THE PARTIES

1.      Nominal Defendant and Counterclaim Plaintiff Neutral Holdings, Inc. ("NHI") is a Delaware corporation with a principal place of business located at 520 Pike Street, Suite 1520, Seattle, Washington, 98101.

2.      Counterclaimant Intego SA is a French *société anonyme* (corporation) with a principal place of business located at 41 rue Condorcet, 75009, Paris.

3.      Counterclaimant Intego Inc. is a Florida corporation with a principal place of business located at 3600 Bee Caves Road, Suite 200, Austin, Texas, 78746.

4.      Plaintiff and Counterclaim Defendant Transeo is a French limited liability company with a principal place of business located at 10 rue Say, 75009, Paris.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this claim under 28 U.S.C. § 1332(a) because this dispute is between a citizen of a State and a foreign citizen and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because Transeo is subject to this Court's personal jurisdiction with respect to these claims. In addition, Transeo has

submitted to the jurisdiction of this Court by bringing this action and pursuant to Section 11.12 of the Services Agreement between Transeo and NHI dated October 23, 2007 (the "Services Agreement").

## STATEMENT OF FACTS

7.      NHI is a portfolio company of Bessemer Venture Partners VI L.P. ("Bessemer"). Bessemer is a venture capital firm that has been in business for more than 100 years and has taken public more than 100 companies.  Bessemer is one of the most active and successful venture capital firms operating in the technology sector today.  Bessemer and its affiliates provided venture capital funding for early industrial companies like WR Grace, Ingersoll Rand and International Paper; retail innovators like Staples, The Sports Authority and Blue Nile; new drug developers like Isis and Perseptive Biosystems; service pioneers like Gartner Group, Bright Horizons and Celtel; and high-tech innovators like Ciena, Parametric, DSP Group (now Intel), Maxim, Flarion (now Qualcomm), Skype, and LinkedIn.  Bessemer has offices throughout the United States and around the world, and manages more than $4 billion of venture capital invested in over 130 companies globally.

8.      Intego SA and Intego, Inc. (collectively, "Intego") are wholly-owned subsidiaries of NHI.

9.      Bessemer's representative on the NHI board is Jeremy Levine.  It also appointed Jeffrey Erwin to the board, and nominated John Goldsmith to the board.  Goldsmith's nomination was duly approved by a vote of the other directors of NHI.

10.     Mr. Levine is currently listed as one of the "Midas Top 10" technology investors by Forbes Magazine, ranking him as among the top global venture capitalists at identifying technology innovation and talent.  He currently sits on the board of directors of several major

technology companies, including Yelp (publicly traded on the New York Stock Exchange with a market capitalization in excess of $1 billon) and Parallels (a global software company with more than $100 million of annual revenues from its software portfolio, which includes several Mac products), and of several smaller high-growth technology innovators, including Pinterest (an Internet virtual pinboard, which reached 10 million unique U.S. monthly visitors faster than any website in history) and Mindbody (a software as a service company that provides critical management software to more than 30,000 wellness businesses around the world).

11.     Mr. Erwin is an experienced software executive and innovator, having started, successfully managed and sold through acquisition three software companies since 1985, served as Vice President of two public companies, served as General Manager at Microsoft for five years and filed for eight patents in the networking field.  Prior to joining Intego as President & Chief Executive Officer, Mr. Erwin served as President and Chief Executive Officer of Pure Networks, which developed both Windows and Mac software and was acquired by networking giant Cisco in 2008.

12.     Mr. Goldsmith is an experienced investor in early-stage and growth companies, is a Certified Public Accountant (inactive), and holds a Masters of Business Administration in Finance from New York University's Stern School of Business.  As well as being a director of Intego, Mr. Goldsmith sits on the board of directors of Gerson Lehrman Group, Lux Research, Sulia, and Matterhorn Data.

13.     From October 23, 2007 until March 1, 2011,  Transeo and NHI were parties to the Services Agreement, by which Transeo agreed to provide a variety of services to NHI.  A true and correct copy of the Services Agreement is attached hereto as Exhibit 1.  The Services

Agreement requires Transeo to provide services to NHI and its subsidiaries (including Intego), including but not limited to:

-       Advice on general management guidance and implementation;

-       Advice with respect to potential acquisition and joint venture targets;

-       Advice with respect to identifying and developing new product lines and new versions of existing products for NHI and its subsidiaries; and

-       Advice on human resource policies, including recruitment and training for NHI and its subsidiaries.

14.     Section 3 of the Services Agreement obligated Transeo to "use competent and experienced personnel, contractors and consultants in rendering the Services."

15.     Section 4 of the Services Agreement further obligated Transeo to "use its reasonable efforts to render the Services called for hereunder in a professional manner and in good faith."

16.     Section 9(a) of the Services Agreement also stated that "[n]either party may assign this Agreement without the other party's prior written consent."

17.     Upon information and belief, Laurent Marteau is the General Manager, majority shareholder, and sole employee of Transeo.

18.     Upon information and belief, all services provided by Transeo to NHI were provided by Laurent Marteau.

19.     During the last three years prior to the termination of the Services Agreement, Intego experienced annual flat revenues and a quarter that saw revenues drop 40% from the year prior, despite overall strong growth in the market for Mac software.

20.     Following the termination of the Services Agreement, Intego's new management discovered that Transeo had engaged in various improprieties during the term of the Services Agreement, thereby materially breaching its obligations under the Services Agreement.

**Transeo's Disregard of Board Directives Regarding the Paris Office Lease**

21.     Transeo's office is located at 10 rue Say, 75009, Paris.

22.     From at least 2007, Intego shared with Transeo the office space at 10 rue Say, 75009, Paris.

23.     At a meeting of the board of directors held on July 24, 2008 (the "July 24, 2008 Meeting"), the NHI board of directors voted to execute a lease for office space at 41 rue Condorcet, 75009, Paris, and instructed Transeo to terminate NHI's existing sublease at 10 rue Say, 75009, Paris.

24.     On information and belief, Transeo or a related party holds and/or held the lease at 10 rue Say, 75009, Paris and was a party to the sublease with Intego.  That conflict was not timely disclosed to the NHI board of directors.

25.     In violation of the instruction from the NHI board of directors, Transeo failed to cancel the sublease, resulting in at least $295,000 in excess rent being paid by Intego SA for office space that was being used by Transeo and was unwanted and unneeded by Intego.

26.     The excess rent paid by Intego SA, in whole or in part, wrongfully inured to the benefit of Transeo.

**Transeo Diverted Intego's Resources, Funds, and Intellectual Property to a Project that the NHI Board of Directors Had Explicitly Rejected**

27.     At the July 24, 2008 Meeting, the NHI board of directors discussed an ongoing Intego development project known as RadioGaga, a radio-streaming service (the "RadioGaga Project").

28.     At the July 24, 2008 Meeting, the NHI board of directors voted to discontinue the RadioGaga Project and instructed Transeo to cease all of Intego's work on the project.

29.     On information and belief, Transeo then created a separate entity under the name GagaFactory.  Neither Intego nor NHI have or had any ownership or other financial interest in GagaFactory.

30.     In violation of the instruction of the NHI board of directors , on information and belief, over the next three years Transeo had at least seven Intego employees continue to perform work on the RadioGaga Project for GagaFactory in the course of their employment with Intego.

31.      The Intego employees built the RadioGaga radio-streaming service, created a commercial web site to sell RadioGaga, created all marketing materials for RadioGaga, and performed all product testing for RadioGaga.

32.     Transeo, through Marteau, instructed the Intego employees to keep their ongoing work on the RadioGaga Project a secret from others at Intego, saying the work was highly confidential.

33.     Upon information and belief, Transeo diverted other of Intego's corporate assets to support of the RadioGaga Project.

34.     Intego has no legal relationship with GagaFactory or the RadioGaga Project, and Intego was not compensated for these services.

35.     Between December 2008 and March 2011, Transeo caused wire transfers of $60,267.00 to be made from an account held by Intego, Inc. to various entities for, upon information and belief, costs purportedly associated with the RadioGaga Project.

36.     In December 2008, Transeo caused a wire transfer of $3,000.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

37.     In May 2009, Transeo caused a wire transfer of $2,000.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

38.     In June 2009, Transeo caused a wire transfer of $2,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

39.     In July 2009, Transeo caused a wire transfer of $2,928.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

40.     In August 2009, Transeo caused a wire transfer of $2,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

41.     In September 2009, Transeo caused a wire transfer of $2,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

42.     In October 2009, Transeo caused a wire transfer of $2,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

43.      In November 2009, Transeo caused a wire transfer of $2,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

44.      On December 3, 2009, Transeo agreed to pay $10,059.00 to an entity identified only as GagaFactory.

45.      On December 23, 2009, Transeo caused a wire transfer of $10,059.00 to be made from an account held by Intego, Inc. to an account held by an entity called Cubic Enterprises Ltd., which, on information and belief, is related to the RadioGaga Project.  The NHI board of directors had neither authorized the transfer nor heard of Cubic Enterprises Ltd.

46.      In January 2010, Transeo caused a wire transfer of $4,040.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

47.      In March 2010, Transeo caused a wire transfer of $4,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

48.      In April 2010, Transeo caused a wire transfer of $4,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

49.      In June 2010, Transeo caused a wire transfer of $4,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

50.     In August 2010, Transeo caused a wire transfer of $4,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

51.     In October 2010, Transeo caused a wire transfer of $4,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

52.     In December 2010, Transeo caused a wire transfer of $4,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

53.     In March 2011, Transeo caused a wire transfer of $4,020.00 to be made from an account held by Intego, Inc. to Felipe Fernandez Lavanderos, for, upon information and belief, costs purportedly associated with the RadioGaga Project.

54.     Transeo's payment of any Intego funds to any party or persons in connection with the RadioGaga Project was not authorized by the NHI board of directors.

55.     Transeo's use of Intego SA's and Intego, Inc.'s employees and other corporate assets in connection with the RadioGaga Project was not authorized by the NHI board of directors.

56.     NHI and Intego were damaged both by the use of Intego SA's engineering, creative, and testing resources in support of the RadioGaga Project and by the diversion of Intego SA's engineering, creative, and testing resources from its own development projects.

57.     On information and belief, Transeo's misallocation of funds for costs purportedly associated with the RadioGaga Project was intended to inure solely for the benefit of Transeo at the expense of NHI and Intego.

32

**Transeo's Unauthorized Execution of an Agreement with Sugar Pepper & Salt**

58.     Transeo  entered into a contract for IT services on Intego's behalf with an entity called Sugar Pepper and Salt ("SPS").

59.     On information and belief, at the time Transeo entered that contract, Transeo knew that the contract was not in Intego's best interest and that Intego did not require the IT services provided for in the contract.

60.     On information and belief, at the time Transeo entered that contract, Transeo knew that its Services Agreement with NHI, and Marteau's employment with Intego, were likely to be terminated within days.

61.     On information and belief, Marteau and/or Transeo holds and/or held a financial interest in SPS.

62.     Shortly before NHI terminated its Services Agreement with Transeo,  Transeo authorized transfers of $12,500 Euros plus VAT and $7,500 Euros plus VAT of Intego's funds to SPS.

63.     Despite being paid approximately $27,289 by Intego for IT services, SPS has never provided any services to Intego nor did the purported IT services contract require any such services to be provided.

64.     Upon information and belief, Transeo's misallocation of Intego resources to SPS was intended to inure to the benefit of Transeo at Intego's expense.

**Transeo's Unauthorized Assignment of the Services Agreement**

65.     Upon information and belief, Transeo assigned its rights and obligations under the Services Agreement to Miracross Limited, a private limited company incorporated in the United Kingdom.

66.     On information and belief, Marteau and/or Transeo holds and/or held a financial interest in Miracross Limited.

67.     Transeo neither sought nor received NHI's written consent for the assignment

68.     This assignment violated Section 9(a) of the Services Agreement, which provides that "[n]either party may assign this Agreement without the other party's prior written consent."

**Transeo's Wrongful Inflation of Bonus Payments**

69.     In 2008, the NHI board of directors agreed to pay Transeo a bonus of $100,000 in recognition of its services in 2007.

70.     In violation of that agreement, on information and belief, in March 2008 Transeo authorized the transfer of 145,000 Euros (approximately $229,100.00 US) to Transeo's bank account in recognition of allegedly "exceptional services."

71.     In 2009, the NHI board of directors agreed to pay Transeo a bonus of $120,000 in recognition of its services in 2008.

72.     In violation of that agreement, on information and belief, in June 2009 Transeo authorized the transfer of 174,000 Euros (approximately $248,130.00 US) to Transeo's bank account in recognition of allegedly "exceptional services."

73.      In 2010, the NHI board of directors agreed to pay Transeo a bonus of $75,000 in recognition of its services in 2009.

74.     In violation of that agreement, on information and belief, in July 2010 Transeo authorized the transfer of 108,750 Euros (approximately $136,920 US) to the bank account of Miracross in recognition of allegedly "exceptional services."

75.     The aforementioned overpayments were made secretly by Transeo and hidden from NHI until the termination of the Services Agreement in 2011.

## FIRST CAUSE OF ACTION ON BEHALF OF NHI:
## BREACH OF CONTRACT AGAINST TRANSEO

76.     Defendant and Counterclaim Plaintiff NHI repeats and incorporates paragraphs 1 through 75 as if set forth in full herein.

77.     At all relevant times, the Services Agreement was a valid, binding, and enforceable contract between Transeo and NHI.

78.     The Services Agreement required that Transeo "use competent and experienced personnel, contractors and consultants in rendering the Services," and "use its reasonable efforts to render the Services called for hereunder in a professional manner and in good faith."

79.     In violation of those obligations, Transeo (a) violated instructions from NHI's board of directors to cancel a superfluous lease, thus causing Intego to pay rent for Transeo's office space, which Intego neither wanted nor needed; (b) violated instructions from NHI's board of directors to discontinue Intego's work on the RadioGaga Project, thus causing Intego to divert and waste resources and capital in support of an unauthorized project controlled or owned by Transeo or its affiliates; (c) entered a contract with SPS on behalf of Intego knowing that Intego would receive no benefit from the contract; and (d) paid itself bonuses that far exceeded the amount authorized by NHI's board of directors.

80.     Transeo's numerous fraudulent and dishonest acts constitute material breaches of the Services Agreement.

81.     The Services Agreement also provides that "[n]either party may assign this Agreement without the other party's prior written consent."

82.     On information and belief, in April 2010 or earlier Transeo assigned its rights under the Services Agreement to Miracross Limited, a private limited company incorporated in the United Kingdom.

35

83.     NHI had not given its prior written consent to Transeo's assignment of its rights to Miracross Limited.

84.     As a direct and proximate result of Transeo's material breaches of its obligations under the Services Agreement, NHI suffered damages to its property and business in an amount to be determined at trial in excess of $75,000.

### SECOND CAUSE OF ACTION ON BEHALF OF NHI, INTEGO SA AND INTEGO, INC. UNJUST ENRICHMENT AGAINST TRANSEO

85.     Defendant and Counterclaim Plaintiff NHI and Counterclaimants Intego SA and Intego Inc. repeat and incorporate paragraphs 1 through 84 as if set forth in full herein.

86.     To the extent that Transeo's wrongful conduct did not constitute a breach by Transeo of the Services Agreement, NHI, Intego SA and Intego Inc. allege in the alternative that Transeo has been unjustly enriched at the expense of NHI, Intego SA and Intego Inc.

87.     By disobeying the express instructions of the NHI board of directors to cancel the lease at 10 rue Say, 75009 Paris, France, Transeo caused Intego SA to pay at least $295,000 in excess rent for office space used solely by Transeo.

88.     Despite the express instructions of NHI's board of directors to discontinue work on the RadioGaga Project, Transeo instead diverted valuable time, personnel, engineering resources and cash of both Intego SA and Intego, Inc. towards the secret and unauthorized development of the RadioGaga Project.  This unauthorized theft of resources inured wrongfully to the benefit of Transeo, which, on information and belief, had or has a financial interest in the RadioGaga Project and/or the GagaFactory entity, at the expense of Intego SA, Intego, Inc., and NHI.

89.     Transeo's execution of a contract with SPS binding Intego SA to make certain payments, and Transeo's subsequent payments of Intego SA funds to SPS, were made by

Transeo knowing that Intego SA would receive neither *bona fide* services nor benefits from SPS. On information and belief, Transeo has or had a financial interest in SPS.

90.     In 2008, 2009, and 2010, Transeo authorized the payment by NHI to Transeo of annual bonuses that far exceeded the amounts authorized by NHI's board of directors.

91.     As a direct and proximate result of Transeo's unlawful and improper conduct, as set forth above, Transeo has been unjustly enriched at the expense of Intego SA, Intego, Inc., and NHI in an amount to be determined at trial in excess of $75,000.

92.     Transeo's retention of funds under these circumstances constitutes unjust enrichment, as Transeo has no right to the benefits that were obtained through its unlawful conduct.

93.     It is against equity and good conscience to permit Transeo to retain the benefits of its unlawful and improper conduct.

## PRAYER FOR RELIEF

WHEREFORE, Defendants, Defendant and Counterclaim Plaintiff NHI, and Counterclaimants Intego SA and Intego, Inc. pray for Judgment as follows:

1.     Dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice and order that Plaintiffs take nothing;

2.     Grant Counterclaim Plaintiffs NHI's prayer for relief on its First Cause of Action for Breach of Contract, and Counterclaimants NHI's, Intego SA's and Intego Inc.'s prayer for relief on their Second Cause of Action for Unjust Enrichment and enter judgment against Transeo in an amount to be determined at trial in excess of $75,000;

3.     Award Defendants their costs incurred in defending this action, including reasonable attorneys' fees; and

4.    Order such other and further relief as the Court may deem proper.

Dated: New York, NY
   April 19, 2013

        QUINN EMANUEL URQUHART
          & SULLIVAN, LLP

      By

        Michael B. Carlinsky
        (michaelcarlinsky@quinnemanuel.com)
        Andrew M. Berdon
        (andrewberdon@quinnemanuel.com)
        51 Madison Avenue, 22nd Floor
        New York, NY 10010
        Telephone: (212) 849-7000
        Facsimile: (212) 849-7100

        *Attorneys for Defendants*
        Bessemer Venture Partners VI L.P., Bessemer
        Venture Partners VI Institutional L.P., Bessemer
        Venture Partners Co-Investment L.P., Deer VI &
        Co., Jeremy Levine, Jeffrey Erwin and Peter Price

        *Attorneys for Nominal Defendant and Counterclaim*
        *Plaintiff*
        Neutral Holdings, Inc.

        *Attorneys for Counterclaim Plaintiffs*
        Intego SA and Intego, Inc.

38