Pre-motion conference to be held on: _____
Opposing counsel to state position (by letter not to exceed 3 pages) in writing one week in advance.
So ordered.
*Cathy Seibel*
Cathy Seibel, U.S.D.J.
Dated: 7/2/13



**SCHIFFHARDIN**LLP

David E. Jacoby
212-745-0876
djacoby@schiffhardin.com

666 FIFTH AVENUE
~~17TH FLOOR~~
NEW YORK, NY 10103

t 212.753.5000
f 212.753.5044
www.schiffhardin.com

July 2, 2013

**BY TELECOPY**

Hon. Cathy Seibel
United States District Judge
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas Street, Room 318
White Plains, NY 10601-4150

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-3-2013
```

Re: *Transeo S.A.R.L. et ano. v. Bessemer Venture Partners VI L.P., et. al.*
(11-cv-5331 (CS) (PED))

Dear Judge Seibel:

This firm represents Plaintiffs Transeo S.A.R.L. ("**Transeo**") and Philippe Gelblat in the above referenced action. Pursuant to Your Honor's Individual Practices Section 2(A), we write to request a pre-motion conference on Plaintiffs' anticipated motion for summary judgment for breach of the Stockholders' Agreement (2d Am. Compl. Ex. 1) (the "**Agreement**").[1]

**Overview.** Bessemer Venture Partners ("**Bessemer**") breached the Agreement by forming a special committee that, prior to or at the August 1, 2011 special meeting of the Board[2] (the "**Special Meeting**"), effectively removed Laurent Marteau ("**Marteau**") as a Director. Bessemer recently admitted in its letter to Your Honor dated May 22, 2013 that it formed the special committee in response to Transeo's alleged breach of the Services Agreement. Bessemer's weak attempt to tie the Counterclaims to its defenses to Plaintiffs' claims is simply an excuse to complicate and re-litigate issues pending in France. As discussed before Your Honor at the May 29, 2013 conference, because this admission makes clear that the special committee was formed as retaliation for Marteau's purported actions, there are no remaining material facts in dispute in connection with the breach of contract claim. Summary judgment is therefore warranted in the interest of judicial efficiency, to substantially narrow the issues remaining to be determined, and to reduce unnecessary discovery, cost, and delay in concluding this action.

**Excluding Marteau Breached the Agreement.** The parties assented to the Agreement's governance in the event of any clash with the ByLaws, and contracted to "exercise any rights

---

[1] Plaintiffs are willing to brief this motion on the same timetable set by the Court for their motion to dismiss or alternatively stay the Counterclaims. This is appropriate because a ruling on summary judgment may facilitate resolution of the pending motion to dismiss and narrow the scope thereof, in both cases facilitating judicial efficiency. It is also appropriate because a *res judicata* decision of the French Tribunal de Commerce on May 30, 2013 finding in Laurent Marteau's favor in an amount of approximately $268,381.00 on his claim of abusive termination as CEO of Intego SA may bear on both motions.

[2] Terms used but not defined herein shall have the meanings ascribed to them in the Agreement or the Complaint.



Hon. Cathy Seibel
July 2, 2013
Page 2

they may have under applicable law" and "other governance documents **in a manner that is consistent with the terms and purposes of this Agreement.**" (§11.10, emphasis added). Bessemer breached this Agreement when it exercised the Board's powers pursuant to Del. Gen. Corp. Law § 141(c)(2) and created a special committee of the Board, effectively to exclude Marteau from the Board. This action constitutes a breach regardless of why or when the special committee was created. *Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575, 618 (S.D.N.Y. 2004) (noting that when parties enter into two integrated agreements, a material breach of one does not excuse compliance with the other).

New York law permits summary judgment for breach of the Agreement because its provisions and the conclusions to be drawn from them are unambiguous. *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990). "One of the oldest and most settled principles of New York law is that a party may not offer proof . . . to alter or refute the clear meaning of unambiguous terms of written, integrated contracts to which assent has voluntarily been given." *Azuma N.V. v. Sinks*, 646 F. Supp. 122, 127 (S.D.N.Y. 1986). First, the Agreement has a "precise covenant" that "irrefutably promise[s]" to keep Marteau on the Board. *See Am. Home Assurance Co. v. Baltimore Gas & Elec. Co.*, 845 F.2d 48, 50-51 (2d Cir. 1988) ("A court can decide the proper interpretation of language in a contract when . . . reasonable persons could not differ on its meaning."). Second, the only question of fact in this contract claim is whether the special committee was created at or before the Special Meeting. This is immaterial because Bessemer breached the Agreement in either event. Finally, Bessemer has expressed no issues of material fact regarding the contract claim; its Counterclaims pertain only to issues that are already being adjudicated in France. As the Agreement is unambiguous and there are no disputes of material fact, only questions of law, this court may resolve liability on the contract claim summarily.

Section 7.1 of the Agreement unambiguously provides that the Board must include Marteau. Transeo and Bessemer expressly covenanted to "use [their] best efforts to maintain the composition of the Board." Bessemer breached this covenant, and accordingly the contract, when it removed Marteau from participation in Board decision-making, be it prior to, at, or after the Special Meeting. *See Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998) (finding a covenant to be an enforceable contractual obligation and upholding a verdict for breach of contract). Delaware courts, pursuant to Del. Gen. Corp. Law § 141(k), permit "any director . . . [to] be removed, with or without cause, by the holders of the majority of the shares." *See Rohe v. Reliance Training Network, Inc.*, 2000 WL 1038190, at *12-13, 16 (Del. Ch. July 21, 2000). However, parties to a contract can specifically overcome this constraint and contractually appoint permanent directors by entering into a "certain and unambiguous" contract that explicitly vests someone with that right. *Id.* at *16. The Agreement specifically states that the "individual selected and nominated by Transeo remains Laurent Marteau" and delimits the appointment of other directors to the initial Board. Because Bessemer is a sophisticated commercial actor that understood the express provisions of the Agreement, this provision should be upheld. *See Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 735 F. Supp. 2d 42, 64 (S.D.N.Y. 2010) (explaining that contractual terms entered into by sophisticated actors should be enforced). Ordinarily, the right to remove a director is reserved to the stockholders. *See Nevins v. Bryan*,


## SCHIFFHARDIN LLP

Hon. Cathy Seibel
July 2, 2013
Page 3

885 A.2d 233, 252 (Del. Ch. 2005) (pursuant to § 141(k), only the "majority of the shares" may remove directors); *see also Kurz v. Holbrook*, 989 A.2d 140, 157 (Del. Ch. 2010), *rev'd on other grounds, Crown Emak Partners, LLC*, 992 A.2d 377 ("For 89 years, Delaware law has barred directors from removing other directors."). Therefore, Bessemer breached the Agreement and Delaware law when it caused directors to remove a fellow director.

Bessemer breached the Agreement whether it formed the special committee at or before the Special Meeting.[3] If the special committee was formed at a Board meeting Marteau did not attend, then Bessemer breached § 7.2 of the Agreement, requiring a unanimous quorum for Board action. Action taken without a quorum must be "nullified." *See Frantz Mfg. Co. v. E.A.C. Indus., Inc.*, 501 A.2d 401, 407 (Del. 1985). Although Del. Gen. Corp. Law § 141(c)(2) permits the Board to form a committee, such committee's powers are constrained by the ByLaws and the Agreement. *See, e.g., CA Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 235 (Del. 2008) (upholding corporate bylaws pertaining to governance structure because they are procedural and "do not improperly encroach upon the board's managerial authority"); Agreement § 11.10 ("This Agreement supersedes all prior agreements . . . between the parties with respect to its subject matter."). Even if defendants contend that the special committee was formed at the Special Meeting, it remains a nullity because Bessemer circulated a misleading agenda for that meeting. The "right to advance notice derives from a basic requirement of [Delaware] corporation law that boards of directors conduct their affairs in a manner that satisfies minimum standards of fairness." *Adlerstein v. Wertheimer*, 2002 WL 205684, at *9 (Del. Ch. Jan. 2, 2002). In *Adlerstein*, the Court of Chancery held that a chairman and CEO received inadequate notice of his removal, even though the bylaws, much like the Agreement here, did not require that directors receive notice or an agenda. *Id.* at *9-11. Because the deceptive conduct prevented the plaintiff from defending against his removal, the actions at the meeting were a nullity. *Id.* at *36-37. Similarly here, the Special Meeting was called with a deceptive agenda padded with items not discussed, nor planned to be discussed, and silent as to the real topic: Marteau's exclusion from Board decision-making. Although there was a quorum at the Special Meeting, a "quorum obtained by trickery is invalid." *Schroder v. Scotten, Dillon Co.*, 229 A.2d 431, 436 (Del. Ch. 1972). If a director's "presence at a meeting was obtained by trickery or deceit because his fellow directors hid from him their plans for his ouster . . . the actions taken were . . . void." *See Adlerstein*, 2002 WL 205684, at *10.

Therefore, as no issues of material fact exist as to Plaintiffs' breach of contract claim, summary judgment is warranted in the interest of judicial efficiency.

Respectfully submitted,

David Jacoby

---

[3] Marteau, having been excluded from the Board, has seen no relevant Board minutes despite demand.



Hon. Cathy Seibel
July 2, 2013
Page 4

cc:   Michael B. Carlinsky, Esq. (via email)
      Andrew Berdon, Esq. (via email)
      Philippe C. M. Manteau

41230-0000
NY\51442405.8



# SCHIFF HARDIN LLP

666 Fifth Avenue, 17th Floor, New York, NY 10103 · 212.753.5000
Facsimile 212.753.5044

|  |  |
|---|---|
| ATTORNEY NO.: | 2524 |
| CLIENT/MATTER NO.: | 41230-0000 |
| DATE: | July 2, 2013 |

## FACSIMILE TRANSMITTAL SHEET

### TO THE FOLLOWING:

| Name | Company | Fax Number | Phone Number |
|---|---|---|---|
| HON. CATHY SEIBEL | U.S. DISTRICT JUDGE | 914 390-4278 |  |
| MICHAEL B. CARLINSKY, ESQ. | QUINN EMANUEL URQUHART OLIVER & HEDGES LLP | 212 849-7100 |  |
| ANDREW BERDON, ESQ. | QUINN EMANUEL URQUHART OLIVER & HEDGES LLP | 212 849-7100 |  |

FROM:  David Jacoby                                   DIRECT DIAL NO.:   212-745-0876

Transmission consists of cover sheet plus ___ page(s).

If there are any problems with this transmission, please call 212 745-0876.

COMMENTS:

Please see attached.

IMPORTANT - THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT READING, DISSEMINATING, DISTRIBUTING OR COPYING THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU

(For Internal Use Only) PLEASE RETURN THIS DOCUMENT TO:

Name: David Jacoby
SENT OUT:
Date: _____ Time: _____ A.M./P.M.
By: _____

Transmittal Problems:
☐ Constant Busy
☐ Constant Ringing
☐ Bad Line
☐ Equipment Problem

Time
_____
_____
_____
_____

NY\51143074.1