


666 FIFTH AVENUE, 17TH FLOOR
NEW YORK, NEW YORK 10103
t 212.753.5000
f 212.753.5044
www.schiffhardin.com

David E. Jacoby
212-745-0876
djacoby@schiffhardin.com

August 6, 2013

Hon. Cathy Seibel
United States District Judge
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas St.
White Plains, New York 10601-4150

Re: *Transeo S.A.R.L. et ano. v. Bessemer Venture Partners VI L.P., et al.* (11-cv-5331 (CS) (PED))

Dear Judge Seibel:

We were surprised that Defendants chose to wait until the week before the August 7 pre-motion conference to disclose their plan to "cross-move" for summary judgment on the non-contract claims, adding it to their response to Plaintiffs' July 2 pre-motion letter on summary judgment motion on the contract claim. We appreciate the Court affording an opportunity for Plaintiffs to respond. Owing to the short time, as well as Transeo's principal, Mr. Marteau, having been in New York for the settlement conference before Magistrate Judge Davison last Wednesday and then in transit home to Europe, this letter was assembled in some haste, but we hope it is clear.

We find Defendants' proposed summary judgment motion to be puzzling. Most notably, Defendants state they will need discovery to make their proposed motion. This, without more, is a strong indication that the motion is premature. Second, while Plaintiffs undertook to make their summary judgment motion on the same timetable as their motion to dismiss Defendants' counterclaims, so as to minimize delay in the event the motion did not prevail, Defendants state that (but do not explain why) they cannot keep to the same schedule. We are tempted to infer that Defendants' goal is to obtain discovery of Plaintiffs while delaying discovery of Defendants. That would be inappropriate. Finally, while Defendants assert "[t]here are no disputed facts on the issues pertinent to the derivative breach of fiduciary duty claims," Your Honor's March 29, 2013 Opinion and Order ("**Op.**") denying dismissal of these same derivative breach of duty claims noted the existence of numerous material factual issues, including the independence of Directors Erwin and Levine, Bessemer's use of the Director Defendants to effect its plan to maintain access to NHI's cash and assets through refusing to consider the AVG offer, and the Director Defendants' maintenance of good faith, among others.

**AVG Offer.** Turning to the specifics of the proposed cross-motion, Defendants assert that the NHI Board "properly considered the indication of interest [manifested by the AVG Offer] at the August

1, 2011 meeting."[1] As appears from the Second Amended Complaint ("**SAC**"), the letter of intent that was defined as the AVG Offer **lapsed by its own terms on March 2, 2011**. SAC ¶ 69.[2] Any discussion five months later is irrelevant. It is of substantial relevance, however, that it is now admitted that NHI and Intego have continued discussions with AVG after 2011 – a fact kept until now from Laurent Marteau, despite Defendants' insistence that he remains a Director. This admission precludes any serious assertion that the AVG Offer could not have been an appropriate one to consider in more depth timely, i.e., before its expiration on March 2, 2011, when the breach of fiduciary duty occurred. Moreover, it establishes the applicability of FRCP 56(d), because there are matters not known to the motion's opponent that are essential to opposing it.[3] Whether or not any of the promised sworn declarations are from AVG[4], discovery of the subsequent discussions with AVG is likely to provide compelling evidence of the extent to which letting the AVG Offer slip away in March 2011 was a grievous breach of fiduciary duty. The pattern of behavior as to an AVG acquisition fits perfectly with Plaintiffs' view that Defendants placed a higher priority on removing Mr. Marteau in 2011 than on pursuing a desirable opportunity. Plaintiffs anticipate introducing sworn affidavit evidence that Defendant Levine said in early 2011 that he would accept an offer of just $17 million.

Defendants' further assertion that Messrs. Erwin and Levine were highly experienced in M&A and business valuation almost sounds like an invocation of the business judgment rule – but, of course, the Court already has found it inapplicable. Op. at p. 25.

**False Documentation.** Defendants do not dispute that the documents at issue are wrong. Instead, they offer two arguments. One is factual – that there were typographical errors[5], or errors that were inadvertent and not substantive.[6] These factual assertions are subject to dispute and warrant discovery.[7] The second argument is that the false documents are not forgeries under Delaware law. This is a flawed argument. First, there is no basis set forth for why Delaware law would govern. One of the documents is alleged to have been a record of a meeting of a French entity held in Larchmont, New

[1] This date is used twice, so we assume it is not a typographical error.

[2] Defendants admitted the letter of intent in their Answer and that the NHI Board voted down the AVG Offer on March 1, 2011 (Answer ¶¶ 69, 99). Defendants also admitted there was discussion at the March 1, 2011 Board meeting of seeking a continuation of the AVG discussions and of appointing a committee to do so.

[3] To the contrary, FRCP 56(d) does not apply to facts not known to the motion's proponent, as Defendants request.

[4] At a trial, of course, live or deposition testimony with the opportunity to cross-examine would be required.

[5] If Bessemer intends to claim that the February 14, 2012 date stated in the Stock Option Plan documents is a typographical error, then it occurred multiple times. Moreover, the reference to Jeff Erwin as CEO of NHI in such documents clearly establishes that it was approved at least after Laurent Marteau's removal as NHI's CEO.

[6] This is incorrect; SAC ¶ 171 alleged that participation by telephone in an Annual General Meeting is not allowed under French law.

[7] It is also of note that significant documents were created so carelessly. One may suspect a similar lack of care will be found in Board and Committee minutes kept from Mr. Marteau – when they are obtained in discovery.



York (where Bessemer's office is located), SAC ¶ 249. It would appear that if any jurisdiction's law would apply, it would be France or New York, and fact discovery on that issue may be needed. In any event, we understand that Intego S.A.'s governance documents did not permit AGM participation by phone. In addition to forgery, New York criminalizes falsification of business documents (Penal Law Art. 175), employing different standards than for forgery. Finally, as we noted in opposing Defendants' unsuccessful motion to dismiss on this claim, there was a mercenary motivation for Defendants to act as they did. SAC ¶ 171 alleges the exercise price set for the options valued NHI at only $10 million, below its then-fair market value, diluting the value of its shares. (It is ironic that NHI rejected a $25 million offer, presumably because it was too low, but identified a much lower number as its fair market value to fit the needs of an advantageous stock grant to some of its employees.) Beyond that, the falsification may implicate deferred compensation issues under Internal Revenue Code § 409(a) and the possibility of discriminatory treatment of minority shareholders, particularly as Defendants appear to state in their letter that grants of shares in fact were made. This is another critical development about which Mr. Marteau has been kept in the dark. It is precisely because Mr. Marteau does not know what has been done with or to NHI since his effective removal from its Board that he cannot regard the recent spurious attempts to invite him to a Board meeting (in e-mails sent in a manner that guaranteed he would not receive them)[8] with anything other than suspicion. What has been done (removing Mr. Marteau through the use of the Special Committee) cannot be so easily undone, especially in hopes of ratifying two (2) years of unknown acts and behavior with which Mr. Marteau may not necessarily want to be associated.

**Intego's Assets.** Finally, Defendants assert that Intego's intellectual property assets were moved to a cloud-based system hosted by Amazon. Where the system is primarily located is not disclosed.[9] It is averred that the "uncontroverted facts" show this was an improvement, but this is an empty assertion of facts about which there also has been no discovery. Indeed, Plaintiffs believe the move may have placed Intego S.A. in violation of French law. Finally, although Defendants' quotation from Plaintiffs' claim also refers to relocation of cash and web services (which have been hacked), Defendants discuss neither item.

[8] Defendant Erwin sent the e-mails using a service called "Did they read it?" which the head of a tech-savvy French business ought to have known (a) would lead to their being directed to a spam catcher; and (b) have been deemed since 2006 by the Article 29 EU Working Party on Data Protection to violate EU data protection laws. See http://www.out-law.com/page-6703 (last viewed on August 6, 2013).

[9] If it was situated in any number of East Coast communities, it likely suffered far more serious electric power interruptions in 2012 due to Hurricane Sandy than the alleged 14-hour one in Paris to which Defendants refer. We are advised that Paris never suffered such a lengthy power outage. In Mr. Marteau's time at Intego, an SMS alert of a power failure would have been sent to key players. Discovery may reveal that Intego discontinued those alerts and so it may have failed to reboot its systems for that long. In any event, it was to deal with precisely such situations that Mr. Marteau engaged Sugar Salt and Pepper, an action that is challenged in a counterclaim before this Court and a claim in France.



Hon. Cathy Seibel
August 6, 2013, Page 4

                          Respectfully submitted,

                          David Jacoby

cc.: Andrew Berdon, Esq.
     Quinn Emanuel Urquhart & Sullivan, LLP
     (by 'fax)

41230-0000
NY\51778450.1

```
********************
***   TX REPORT   ***
********************

TRANSMISSION OK

TX/RX NO                 3893
RECIPIENT ADDRESS        3641#230000017#12128497100#
DESTINATION ID
ST. TIME                 08/06 17:25
TIME USE                 02'17
PAGES SENT               5
RESULT                   OK
```

666 Fifth Avenue, 17th Floor, New York, NY 10103 · 212.753.5000
Facsimile 212.753.5044

ATTORNEY NO.: 2524
CLIENT/MATTER NO.: 41230-0000
DATE: August 6, 2013

# FACSIMILE TRANSMITTAL SHEET

**TO THE FOLLOWING:**

| Name | Company | Fax Number | Phone Number |
|---|---|---|---|
| HON. CATHY SEIBEL | U.S. DISTRICT JUDGE | 914 390-4278 | |
| ANDREW BERDON, ESQ. | QUINN EMANUEL URQUHART OLIVER & HEDGES LLP | 212 849-7100 | |
| | | | |

FROM: David Jacoby DIRECT DIAL NO.: 212-745-0876

Transmission consists of cover sheet plus 4 page(s).

If there are any problems with this transmission, please call 212 745-0876.

COMMENTS:

Please see attached.

********************
*** TX REPORT ***
********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 3892 |
| RECIPIENT ADDRESS | 3641#230000017#19143904278# |
| DESTINATION ID | |
| ST. TIME | 08/06 17:18 |
| TIME USE | 04'45 |
| PAGES SENT | 5 |
| RESULT | OK |

SCHIFF HARDIN LLP

666 Fifth Avenue, 17th Floor, New York, NY 10103 · 212.753.5000
Facsimile 212.753.5044

ATTORNEY NO.: 2524
CLIENT/MATTER NO.: 41230-0000
DATE: August 6, 2013

## FACSIMILE TRANSMITTAL SHEET

**TO THE FOLLOWING:**

| Name | Company | Fax Number | Phone Number |
|---|---|---|---|
| HON. CATHY SEIBEL | U.S. DISTRICT JUDGE | 914 390-4278 | |
| ANDREW BERDON, ESQ. | QUINN EMANUEL URQUHART OLIVER & HEDGES LLP | 212 849-7100 | |
| | | | |

FROM: David Jacoby DIRECT DIAL NO.: 212-745-0876

Transmission consists of cover sheet plus 4 page(s).

If there are any problems with this transmission, please call 212 745-0876.

COMMENTS:

Please see attached.



666 Fifth Avenue, 17th Floor, New York, NY 10103 · 212.753.5000
Facsimile 212.753.5044

ATTORNEY NO.: 2524
CLIENT/MATTER NO.: 41230-0000
DATE: August 6, 2013

# FACSIMILE TRANSMITTAL SHEET

**TO THE FOLLOWING:**

| Name | Company | Fax Number | Phone Number |
|---|---|---|---|
| HON. CATHY SEIBEL | U.S. DISTRICT JUDGE | 914 390-4278 | |
| ANDREW BERDON, ESQ. | QUINN EMANUEL URQUHART OLIVER & HEDGES LLP | 212 849-7100 | |
| | | | |

FROM: David Jacoby DIRECT DIAL NO.: 212-745-0876

Transmission consists of cover sheet plus 4 page(s).

If there are any problems with this transmission, please call 212 745-0876.

COMMENTS:

Please see attached.

IMPORTANT - THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT READING, DISSEMINATING, DISTRIBUTING OR COPYING THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU

*(For Internal Use Only)* PLEASE RETURN THIS DOCUMENT TO:

Name: David Jacoby
**SENT OUT:**
Date: ____________ Time: ____________ A.M./P.M.
By: ____________

Transmittal Problems:

| | Time |
|---|---|
| ☐ Constant Busy | |
| ☐ Constant Ringing | |
| ☐ Bad Line | |
| ☐ Equipment Problem | |