# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

| | |
|---|---|
| TRANSEO S.A.R.L. AND PHILIPPE GELBLAT,<br><br>Plaintiffs,<br><br>v.<br><br>BESSEMER VENTURE PARTNERS VI L.P., BESSEMER VENTURE PARTNERS VI INSTITUTIONAL L.P., AND BESSEMER VENTURE PARTNERS CO-INVESTMENT L.P., ET AL.<br><br>Defendants,<br><br>and<br><br>NEUTRAL HOLDINGS, INC.,<br><br>Nominal Defendant and Counterclaim Plaintiff,<br><br>and<br><br>INTEGO, INC. AND INTEGO SA,<br><br>Counterclaim Plaintiffs. | 11 CV 5331 (CS) (PED) |

## **DECLARATION OF DOMINIQUE BORDES**

I, Dominique Bordes, declare as follows:

1.  I am a founding Partner of ROSSI BORDES AARPI, a law firm based in Paris. I was formerly a Partner at ORRICK HERRINGTON AND SUTCLIFFE LLP, at the Paris Office. I hold a Master Degree in general private law from the University Paris II Panthéon Assas and a Post Graduate Degree of general private law (*DEA*) from the University Paris I Panthéon-Sorbonne. I am admitted to practice in France (1998).

2. I make this declaration in support of Counterclaimants' Opposition to Plaintiffs' Motion to Dismiss the Counterclaims. I have personal knowledge of the facts set forth herein.

3. I represented Intego SA in a suit brought by Mr. Laurent Marteau in the Tribunal de Commerce de Paris (the "Termination Claim").

4. Neither Neutral Holdings, Inc. nor Transeo were parties to the Termination Claim.

5. The Termination Claim related solely to the issue of whether the circumstances of Mr. Marteau's termination from his position as Intego SA's Director and Chief Executive Officer were abusive. Contrary to Mr. Marteau's statement, the Termination Claim did not relate to the issue of whether the decision to terminate Mr. Marteau was itself abusive. The Tribunal de Commerce defined the scope of its jurisdiction as follows: *"Whereas the Court does not need to examine the reasons for Laurent MARTEAU's dismissal . . . but only the circumstances, in order to assess whether these circumstances were abusive or persecutory in nature…"* See Ex. A to Declaration of Laurent Marteau ("Marteau Decl.").

6. In the Termination Claim, Mr. Marteau claimed € 1,200,000 for the compensation of his moral damages and € 25,000 in attorney expenses.

7. Under French law, moral damages are also known as non-pecuniary damages, and are meant to compensate for intangible losses such as, for example, pain and suffering or injury to reputation.

8. Intego SA's only counterclaim against Mr. Marteau in the Termination Claim was for the costs incurred in defending the Termination Claim.

9. On May 31, 2013, the Tribunal de Commerce found that the circumstances of Mr. Marteau's termination were abusive under French law for the sole reason that Intego SA allegedly did not respect the "adversarial principle." The Tribunal de Commerce found that in

this case, the adversarial principle required that Intego SA provide Mr. Marteau with the opportunity to share his observations regarding the termination. The Tribunal de Commerce ordered Intego SA to pay € 200,000 in compensation for Mr. Marteau's moral damages and € 5,000 in attorney expenses.

10. The Tribunal de Commerce explained that these figures were derived as follows: *"[w]hereas, finally, the fact that Laurent MARTEAU does not receive any remuneration is irrelevant with respect to the reparation of the injury caused by the non-adversarial nature of the decision to dismiss him as director, since the moral damage is not connected to whether or not he receives remuneration or the fact that he receives remuneration through the parent company."* See Ex. A to Marteau Decl.

11. Therefore, there is no doubt that the remunerations and the bonuses paid to Transeo were outside the scope of the judgment of the Tribunal de Commerce, which could only order moral damages as compensation for Mr. Marteau's personal prejudice resulting from the purported abusive circumstances of his termination.

12. Although Mr. Marteau claimed for moral damages, and only moral damages could be awarded to him by the Tribunal de Commerce, Mr. Marteau falsely states in his declaration that:

- (i) his counsel explained the services contract between Neutral Holding, Inc. and Transeo;
- (ii) he provided a presentation of the amounts Transeo had been paid under the services contract;
- (iii) Neither Intego SA, nor its counsel objected to his presentation or challenged the accuracy of his presentation; and

3

>   (iv) Intego SA did not challenge the propriety of the sums he received through the services contract. *See* Marteau Decl. at ¶ 7.

13. I strongly and vigorously contest these assertions.

14. During the hearing, Mr. Marteau and his counsel tried to justify his extravagant claim of € 1,200,000 by mentioning the remunerations received by Transeo from Neutral Holding, Inc. Contrary to Mr. Marteau's declaration, I strongly objected because:

>   (i) Only moral damages may be claimed as compensation for the circumstances of a termination, which Mr. Marteau knew since he did not claim for pecuniary damages in his submissions;
>
>   (ii) Furthermore, it would have made no sense to take into account the remuneration of Transeo at Neutral Holding, Inc.'s level, since we were only debating the termination of Mr. Marteau's position of Director and Chief Executive Officer of Intego SA;
>
>   (iii) In any case, as neither Neutral Holding, Inc. nor Transeo were parties to this proceeding, the sums paid by the former to the latter had no connection with Mr. Marteau's termination.

15. Neither Intego SA nor Mr. Marteau offered any evidence or proof before the Tribunal de Commerce of the remunerations and bonuses paid by Neutral Holding, Inc. to Transeo.

16. As it was obviously outside of the scope of its jurisdiction, the Juge Rapporteur did not even mention in the judgment the remuneration Transeo received from Neutral Holding, Inc.

17. Mr. Marteau attempts to mislead this Court in his declaration by deliberately misconstruing the statements of the Tribunal de Commerce. Indeed, not only has Mr. Marteau falsely declared that the issue of the remunerations and bonuses paid to Transeo were examined by the Tribunal de Commerce, but he has also asserted that the representatives of the parties made *"no objections"* to the presentation, and had purportedly accepted it *"[p]ursuant to the provisions of article 871 of the Code of Civil Procedure."* See Marteau Decl. at ¶ 7.

18. To assess Mr. Marteau's statement, it's worth quoting Article 871 of the Code of Civil Procedure, which reads as follows: *"the judge responsible for examining the case may also, if the parties do not so oppose, sit alone to hear the closing speech."*

19. As a result, the purported acceptance by Intego SA pursuant to Article 871 of Mr. Marteau's so-called presentation of the amounts Transeo had been paid under the services contract makes no sense. Under Article 871, the parties only accepted (or "did not oppose") the fact that the judge would sit alone to hear the closing speech.

20. Intego SA paid the judgment of € 205,000 to Mr. Marteau and on June 17, 2013, Intego SA filed an appeal of the judgment.

21. Within the scope of the appeal, Intego SA is contesting the alleged non-adversarial manner of the termination of Mr. Marteau.

22. I confirm that:

    (i) neither Neutral Holding, Inc., nor Transeo are parties to the appeal; and

    (ii) the Court of Appeal does not have jurisdiction to examine the remunerations and the bonuses paid by Neutral Holding, Inc. to Transeo.

23. I also represent Intego SA in a suit brought by Transeo in the Tribunal de Grande Instance de Paris (the "Intego SA Sublease Claim"). The Intego SA Sublease Claim alleges that

Transseo is owed rent by Intego SA pursuant to a sublease for premises located at 10 rue say, 75009, Paris.

24. Intego SA has counterclaimed in that case, arguing that the sublease was invalid and seeking the return of already-made rent payments, damages for Transeo's abuse of process, and costs incurred in defending the Intego SA Sublease Claim.

25. The Tribunal de Grande Instance de Paris has scheduled a hearing in the Intego SA Sublease Claim on January 16, 2014.

26. I also represent Intego SA in a countersuit brought against Mr. Laurent Marteau and Transeo in the Tribunal de Commerce de Paris (the "Intego SA Countersuit"). The Intego SA Countersuit alleges that Mr. Marteau and Transeo improperly diverted Intego SA's assets to a project known as "RadioGaga;" that Mr. Marteau and Transeo improperly concluded an agreement on Intego SA's behalf with an entity known as Sugar Pepper & Salt; that Mr. Marteau and Transeo fraudulently concluded and maintained Intego's sublease for the premises located at 10 rue say, 75009, Paris; and that Mr. Marteau and Transeo improperly authorized additional compensation to Mr. Marteau's wife, a former Intego SA employee.

27. The Intego SA Countersuit was stayed on May 17, 2013, pending a ruling by the Tribunal de Grande Instance with respect to the Intego SA Sublease Claim and other related claims. It is uncertain when these claims will be permitted to proceed.

28. Neither Neutral Holdings, Inc. nor Intego, Inc. have appeared in the Termination Claim, the Intego SA Sublease Claim, or the Intego SA Countersuit.

29. The services agreement between Neutral Holdings, Inc. and Transeo is not at issue in the Termination Claim, the Intego SA Sublease Claim, or the Intego SA Countersuit.

30. The dispute between Neutral Holdings, Inc. and Transeo regarding the payment of bonuses to Transeo under the services agreement is not at issue in the Termination Claim, the Intego SA Sublease Claim, or the Intego SA Countersuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30th day of October, 2013 in Paris, France.

_____
DOMINIQUE BORDES