UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

TRANSEO S.A.R.L. AND PHILIPPE GELBLAT,

        Plaintiffs,

        v.

BESSEMER VENTURE PARTNERS VI L.P., BESSEMER VENTURE PARTNERS VI INSTITUTIONAL L.P., AND BESSEMER VENTURE PARTNERS CO-INVESTMENT L.P., ET AL.,

        Defendants.

11 CV 5331 (CS) (PED)

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO DISMISS THE COUNTERCLAIMS**

        Schiff Hardin LLP
        Thomas P. Battistoni (TB 8012)
        666 Fifth Avenue, 17th Floor
        New York, New York 10103
        (212) 753-5000
        *Attorneys for Plaintiffs*

# Table of Contents

Table of Contents ................................................................................................................ i

Table of Authorities ........................................................................................................... ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .......................................................................................................................2

I.  COUNTERCLAIMANTS' FRENCH CLAIMS ARE THE SAME AS THE
    CLAIMS MADE IN THE COUNTERCLAIMS ..........................................................2

II. COUNTERCLAIMANTS DO NOT ADDRESS PRECEDENTS FOR STAYS
    ON THE BASIS OF INTERNATIONAL COMITY ....................................................5

III. COUNTERCLAIMANTS FAIL TO DEMONSTRATE THAT INTEGO, INC.'S
     COUNTERCLAIM MEETS THE JURISDICTIONAL AMOUNT IN
     CONTROVERSY REQUIREMENT ...........................................................................8

CONCLUSION ....................................................................................................................9

# Table of Authorities

*Burr ex rel. Burr v. Toyota Motor Credit Co.*,
    478 F. Supp. 2d 432 (S.D.N.Y. 2006)..........................................................................8

*Compania Embotelladora del Pacifico v. Pepsi Cola Co.*,
    256 F.R.D. 131 (S.D.N.Y. 2009) ..................................................................................6

*Klonis v. Nat'l Bank of Greece, S.A.*,
    487 F. Supp. 2d 351 (S.D.N.Y 2006)...................................................................... 7-8

*Negrin v. Kalina,*
    2010 WL 2816809 (S.D.N.Y. July 15, 2010) ...............................................................7

*Ole Media Mgmt., L.P. v. EMI April Music, Inc.*,
    2013 WL 2531277 (S.D.N.Y. June 10, 2013) ..............................................................5

*Pravin Banker Associates, Ltd. v. Banco Popular Del Peru,*
    109 F.3d 850 (2d Cir. 1997)..................................................................................... 5-6

*Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006).........................................................................................5

*Tarazi v. Truehope Inc.,*
    2013 WL 3820664 (S.D.N.Y. July 24, 2013) ........................................................... 6-7

Plaintiffs Transeo S.A.R.L. ("**Transeo**") and Philippe Gelblat (collectively "**Plaintiffs**") respectfully submit this memorandum of law in further support of their motion (the "**Motion**"[1]) to dismiss or, alternatively, stay the counterclaims brought on behalf of (i) nominal defendant Neutral Holdings, Inc. ("**NHI**"), for breach of contract, and (ii) NHI, Intego S.A. and Intego, Inc. (the last two entities being referred to herein as the "**Intego Entities**", and all three entities being referred to herein as the "**Counterclaimants**"), for unjust enrichment (collectively, the "**Counterclaims**"), and in response to Counterclaimants' Opposition to Transeo's Motion to Dismiss the Counterclaims (the "**Opposition**" or "**Opp. Br.**").

## PRELIMINARY STATEMENT

Try as they might, Counterclaimants cannot obscure that they previously brought claims in France that they now purport to assert again in their Counterclaims. As will be shown below, their attempt to distinguish the French litigations fails. They cannot start their litigations in France, lose a battle here and there, and then try to re-litigate the same claims in the United States. If international comity is to have any meaning, Counterclaimants cannot play these games. The Counterclaims should be dismissed or stayed in light of the ongoing French litigations over these same claims. Lastly, Counterclaimants still have not shown that they have anywhere near the minimum $75,000 jurisdictional amount for the Intego, Inc. diversity claim, and it must be dismissed.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

1

## ARGUMENT

**I.   COUNTERCLAIMANTS' FRENCH CLAIMS ARE THE SAME AS THE CLAIMS MADE IN THE COUNTERCLAIMS**

Counterclaimants attempt to argue that the pending French actions are not sufficiently similar to the Counterclaims to merit a dismissal or stay. However, they present a Declaration of Dominque Bordes, their counsel in France, which completely undermines their argument. A comparison of the Counterclaims and the claims described by Bordes with respect to his litigations in France, demonstrates that these are obviously the same claims:

Paris Lease Claims

- The Counterclaim seeks to recover "excess rent" paid for the office space at 10 rue Say in Paris (Counterclaims, ¶¶ 24-26);

- Mr. Bordes admits that his litigation in the Tribunal de Grande Instance de Paris is "seeking the return of already-made rent payments" and argues that "the sublease was invalid" for the office space at 10 rue Say in Paris (Bordes Decl. at ¶¶ 23-25); and

- Mr. Bordes also admits that he has claims against Transeo alleging that it "fraudulently concluded and maintained Intego's sublease for the premises located at 10 rue say, 75009, Paris . . ." in the Tribunal de Commerce de Paris (Bordes Decl. at ¶ 26).

Radio Gaga Claims

- The Counterclaim alleges "Transeo diverted . . . Intego's corporate assets to support the RadioGaga Project" (Counterclaims, at ¶ 33); and

- Mr. Bordes said he represents Intego's countersuit against Transeo in which he alleges that "Transeo improperly diverted Intego S.A.'s assets to a project known as RadioGaga" in the Tribunal de Commerce de Paris (Bordes Decl. at ¶ 26).

Sugar Pepper & Salt Claims

- The Counterclaim alleges "Transeo's Unauthorized Execution of an Agreement With Sugar Pepper & Salt" (Counterclaims, heading above at ¶ 58); and

- Mr. Bordes admits he is prosecuting claims that allege "Transeo improperly concluded an agreement on Intego S.A.'s behalf with an entity known as Sugar Pepper & Salt" in the Tribunal de Commerce de Paris (Bordes Decl. at ¶ 26).

Unfortunately, Mr. Bordes' candor and admissions only go so far. Among other things, he fails to disclose to the Court that it was on his motion, on behalf of Counterclaimant Intego S.A., that the Tribunal de Commerce claims were stayed until after the January 6, 2014 hearings before the Tribunal de Grande Instance regarding the lease for the office space at 10 rue Say in Paris. *See* Reply Declaration of Laurent Marteau (the "**Marteau Reply Declaration**") at ¶¶ 2, 3.

Counterclaimants also attempt to confuse the issues by stating that "the Intego SA Sublease Claim seeks to determine the validity of a French lease . . . while the Counterclaims allege that Transeo breached the Services Agreement when it entered into a lease against the Board's wishes."  A review of the Services Agreement demonstrates that this statement is not correct.

The sublease has nothing to do with the services provided by Transeo to NHI under the Services Agreement.  Section 1 of the Services Agreement in its entirety provides:

> 1. Services.   The Services shall specifically include, but not be limited to:
> - Advice on general management guidance and implementation;
> - Advice with respect to potential acquisition and joint venture targets;
> - Advice with respect to identifying and developing new products lines and new versions of existing products for NHI **and its subsidiaries**; and

3

- Advice on human resources policies including recruitment and training for NHI **and its subsidiaries**.

Pursuant to the Services Agreement, the only duties Transeo owes to NHI's subsidiaries are in connection with "identifying and developing new product lines" and "human resources policies," and Transeo owes no such duties in connection with a real estate lease. In contrast, NHI (not Transeo) entered into separate services agreements with each of its subsidiaries, pursuant to which NHI would perform, for each of Intego S.A. and Intego, Inc., services including "[s]upplementary executive management services including Board-level corporate strategy and oversight, general management guidance and implementation, **and all finance and administrative functions** detailed [t]herein." See Exhibits A and B to the Marteau Reply Declaration (emphasis added).

      Counterclaimants incorrectly contend that the Counterclaims do not involve real estate in Paris. In doing so, they are misconstruing the claims to try and get out from under French law that mandates, as a matter of public policy, that actions involving French real estate (be they the Counterclaim for "excess rent" or the French action claim for "the return of already-made rent payments") are the exclusive jurisdiction of French courts. See Legal Opinion of Professor Jean-Pierre Blatter, dated September 26, 2013 ("**Consultation**"), attached to initial Declaration of Laurent Marteau in Support of the Motion as Exhibit C. We can only conclude that by not opposing this determining and key factor, Counterclaimants concede and agree.

      First, as explained in the Brief, French courts have exclusive jurisdiction over all actions in which the subject matter includes French real estate. This is evident by the fact that the very issue of whether the continuation of the sublease was in accordance with an NHI Board directive has been litigated in one of the French actions. See highlighted portion of Exhibit C to the

Declaration, providing, in French, with English translations, the summary pleadings in the action. This action should rightly be, and will be, decided by the French court.

## II. COUNTERCLAIMANTS DO NOT ADDRESS PRECEDENTS FOR STAYS ON THE BASIS OF INTERNATIONAL COMITY.

Counterclaimants offer no response to controlling and persuasive precedent regarding dismissals or stays on the basis of international comity. As discussed in the Brief, in *Ole Media Mgmt., L.P. v. EMI April Music, Inc.*, 2013 WL 2531277 (S.D.N.Y. June 10, 2013), the court issued an unlimited stay on the grounds of international comity and judicial economy where (a) the parties were "similar," (b) neither party disputed the adequacy of the alternative forum, and (c) the foreign proceeding would settle a key issue in the domestic proceeding. 2013 WL 2531277, at *4-6. Here, (a) Counterclaimants state that the parties are not the same, but are unable to dispute that the parties (Intego S.A., Intego, Inc., and their parent company NHI), are "similar"; (b) Counterclaimants have wholly conceded that France is an "adequate forum" (Opp. Br. at 16); and (c) without regard to the actions stayed in France, the actively-pending French action would necessarily settle a key issue in the Counterclaims, as they involve the same subject matter—whether monies are due under a Paris office lease, an interest in French real estate.

Moreover, Counterclaimants ignore the fact that, in *Royal*, the Second Circuit specifically remanded the action for the district court to consider a stay. *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 96-97 (2d Cir. 2006) ("Accordingly, on remand the district court may consider whether its obligation to exercise jurisdiction over this action could be satisfied despite the entry of a brief . . . .").

Counterclaimants also argue that Plaintiffs "misplace reliance" on *Pravin Banker Associates, Ltd. v. Banco Popular Del Peru,* 109 F.3d 850 (2d Cir. 1997). Plaintiffs cited *Pravin Banker* as an example of a situation in which a district court may consider a "measured stay."

5

There, the district court granted a six (6)-month stay, then another two (2)-month stay, and finally determined that the defendants' request for an indefinite stay was inappropriate. The Second Circuit agreed with the district court's actions on all accounts, stating that "[t]he six-month stay in [the first US action] . . . followed the federal courts' long-standing recognition of foreign bankruptcy proceedings." *Id.* at 855. The stay requested here in the alternative is akin to the aggregate eight (8)-month stay granted in *Pravin Banker* in that Plaintiffs have not made any previous requests for stay and in that stay is appropriate given the French judicial system's exclusive interest in adjudicating disputes relating to real estate located in France.

In opposition to Plaintiffs' alternative request to sever the Counterclaims (so as to prevent them from confusing the issues here), Counterclaimants cite *Compania Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131 (S.D.N.Y. 2009), a case that had been in litigation for almost ten (10) years. There, the court declined to sever claims where they were "inextricably intertwined and will require overlapping if not identical proof." This is not the case here. Though the French actions were first-filed, both the French actions and the instant action have only been in litigation for two (2) years. In addition, as more specifically set forth in the Brief, the Counterclaims are rather "inextricably intertwined" with the French actions, not with Plaintiffs' claims in this case, and would thus require different proof and a significant amount of discovery that would not otherwise be relevant to this case.

The other cases cited by Counterclaimants against abstention or stay are similarly distinguishable for the simple fact that the current situation presents a much more "exceptional circumstance" for purposes of the Second Circuit analysis under *Royal.* Likewise, later in the Opposition (Opp. Br. at 16), Counterclaimants cite *Tarazi v. Truehope Inc.* for the premise that the order of filing is not an exceptional circumstance where the filings were made in close

6

temporal proximity. 2013 WL 3820664 (S.D.N.Y. July 24, 2013). However, in *Tarazi*, the court ultimately stayed the US action in deference to the Canadian action that was commenced a mere two weeks prior to the US action. *Id.* at *6. In addition, the court specifically noted that the fact that discovery had commenced in the Canadian action and had yet to begin in the US action is a "factor [that] weighs in favor of a stay." *Id.* Here, discovery has only just begun, whereas the French court is likely to issue a final judgment in mere months.

*Negrin v. Kalina*, which Counterclaimants detail in support of their argument that the French actions are wholly unrelated and therefore not subject to international comity, is likewise distinguishable. 2010 WL 2816809 (S.D.N.Y. July 15, 2010). Counterclaimants suggest that the *Negrin* court decided that neither dismissal nor a stay was warranted due to the sole fact that the actions were "not parallel." However, in *Negrin* the court found that the actions were "not parallel" not only because the actions contained different claims, but because there were "no additional circumstances that outweigh the Court's general obligation to exercise its jurisdiction." *Id.* at *10. Moreover, the court in *Negrin* identified quite a few other reasons not to abstain on grounds of international comity, including the facts that (1) the foreign action, though originally first-filed, was dismissed and re-filed after the US action, and (2) "documentary evidence and many witnesses are likely located or obtainable" in the US. *Id.* As discussed in the Brief and above, that is not the case here.

Further, with respect to Plaintiffs' request for a stay as an alternative to outright dismissal, Counterclaimants' quote of *Klonis v. Nat'l Bank of Greece, S.A.,* 487 F. Supp. 2d 351 (S.D.N.Y 2006) (Opp. Br. at 17) is misleading. They state that "Transeo ignores that a 'decision on a request for a stay is made by reference to the same standards as a motion to dismiss on such grounds.'" However, the full case quote reads:

7

> The Second Circuit recognized the Supreme Court's caution that "'a stay is as much a refusal to exercise jurisdiction as a dismissal' because the decision to grant a stay 'necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case.'" *Royal & Sun Alliance* at 96 (quoting *Moses H. Cone,* 460 U.S. at 28). **Nevertheless, the Second Circuit stated that in certain circumstances a "measured temporary stay need not result in a complete forfeiture of jurisdiction," and may be appropriate to give a district court "a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties...."** *Id.* **Such a stay should usually be considered before granting a motion to dismiss in deference to a pending foreign action**, and a decision on a request for a stay is made by reference to the same standards as a motion to dismiss on such grounds.

*Id.* (emphasis added). This is exactly the alternative relief Plaintiffs seek, if outright dismissal is not granted—a temporary stay in order for the Court to determine whether the French actions will resolve the relevant issues in the Counterclaims.

### III. COUNTERCLAIMANTS FAIL TO DEMONSTRATE THAT INTEGO, INC'S COUNTERCLAIM MEETS THE JURISDICTIONAL AMOUNT IN CONTROVERSY REQUIREMENT.

Finally, with respect to Intego, Inc.'s Counterclaim, more is required than a mere conclusory statement that "there is a 'reasonable probability that the claim is in excess of the statutory jurisdictional amount'" of $75,000. Counterclaimants rely on *Burr ex rel. Burr v. Toyota Motor Credit Co.*, in which the court found the jurisdictional standard satisfied where the complaint alleged "serious and severe permanent personal injuries," which increased likely damages due to the fact that the plaintiff was a teenager terribly injured and maimed in a vehicle collision. 478 F. Supp. 2d 432 (S.D.N.Y. 2006). No such exceptional damages are alleged here. Rather, here there is an allegation that some $60,000 in wire transfers were diverted improperly. Counterclaimants simply cannot show that they have the nearly $15,000 in additional, un-alleged damages to get to the minimum jurisdictional amount for diversity jurisdiction on this claim.

8

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion, dismissing the Counterclaims with prejudice or, in the alternative, severing and staying the Counterclaims pending the outcome of this litigation and the ongoing litigation in France.

Dated: New York, New York
November 18, 2013

                                          Respectfully submitted,
                                          SCHIFF HARDIN LLP


                                By: _/s/ Thomas P. Battistoni_____
                                      Thomas P. Battistoni (TB 8012)
                                      666 Fifth Avenue, 17th Floor
                                      New York, New York 10103
                                      (212) 753-5000

                                      *Attorneys for Plaintiffs*

41230-0000

NY\51860231.3