# MEMO ENDORSED

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

> Plaintiffs shall reply by 12/3/13. Issues will be addressed at previously-scheduled conference on 12/10/13 @ 10: a.m. in Courtroom 420.
>
> SO ORDERED:
> /s/ Hon. Paul E. Davison
> United States Magistrate Judge
> 11-25-13

WRITER'S DIRECT DIAL NO.
(212) 849-7107

WRITER'S INTERNET ADDRESS
andrewberdon@quinnemanuel.com

November 22, 2013

VIA FACSIMILE

Magistrate Judge Paul E. Davison
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re: *Transeo S.A.R.L. and Philippe Gelblat v. Bessemer Venture Partners VI L.P., et al.*,
No. 11-CV-5331 (CS)(PED)

Dear Judge Davison,

We represent Defendants Bessemer Venture Partners VI L.P., Bessemer Venture Partners VI Institutional L.P., Bessemer Venture Partners Co-Investment L.P., Deer VI & Co. LLC., Jeremy Levine, Jeffrey Erwin, and Peter Price, (collectively, "Defendants"), Nominal Defendant and Counterclaim Plaintiff Neutral Holdings, Inc. ("NHI"), and Counterclaim Plaintiffs Intego S.A. and Intego, Inc. (collectively, "Intego") in the above-referenced action. We write to respectfully request a pre-motion conference regarding a motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c) precluding Plaintiffs Transeo S.A.R.L. and Philippe Gelblat (collectively, "Plaintiffs") from taking discovery that is harassing, annoying, embarrassing, and oppressive, and is unnecessary in light of the Court's March 29, 2013 order granting in part and dismissing in part Defendants' Motion to Dismiss.

### *Plaintiffs Have Sought Clearly Harassing Discovery*

Plaintiffs' Second Amended Complaint was filed on May 14, 2012. In the Second Amended Complaint, Plaintiffs alleged, in relevant part, as follows:

> As the founder of the Intego Companies, which had been consolidated into NHI, Marteau also warned the NHI BOD that his termination could result in serious personnel morale and retention issues with the Intego Companies' employees, many of whom were located in France and had been working with Marteau for many years. Tragically, this prediction came true when an employee, the Senior IT/Design Manager of Intego S.A., subsequently committed suicide, apparently at

> least partially as a result of this concerns over his continued employment
> following the management change at NHI and the Intego Companies.

(Second Am. Compl., at ¶ 121.) Plaintiffs did not provide any factual basis for the allegation that this unfortunate event was "apparently at least partially" related to "concerns over [Mr. Marteau's] continued employment." Nor did they include this allegation in any of the eleven substantive counts contained in the Complaint. (*See id.* at ¶¶ 172-256.)

Defendants moved to dismiss the Complaint on June 13, 2012. By Order dated March 29, 2013, the Court granted in part and dismissed in part Defendants' Motion. Plaintiffs were left with four surviving claims: a claim for breach of contract by Bessemer Venture Partners VI L.P., for allegedly violating provisions of a Stockholders' Agreement between Transeo and Bessemer which gave Transeo the right to appoint Marteau to the Board of NHI; a derivative claim for breach of fiduciary duty by Defendants for allegedly failing to investigate and respond to a letter of interest in Intego from a competitor; a derivative claim for breach of fiduciary duty by defendants Levine and Erwin for allegedly forging documents and relocating cash and assets in violation of European Union data privacy laws; and a derivative claim for aiding and abetting the breach of fiduciary duty by defendant Price for assisting in the alleged forgery.

None of Plaintiffs' remaining four claims encompasses the allegation set forth in the Complaint that the NHI Board disregarded any "warning" by Marteau or that his termination as an officer of Intego and NHI caused "personnel morale and retention issues" at Intego, much less the tragic suicide of an Intego employee.

While none of their original claims—much less the claims that survived Defendants' Motion to Dismiss—concerned Plaintiffs' allegations regarding the employee suicide, Plaintiffs on September 20, 2013 nonetheless served a request for the production of documents related specifically to the employee suicide:

> **Request 23.** Documents relating to NHI or Intego policies concerning employee
> suicide, including, without limitation, investigations into any employee suicides,
> for the period March 1, 2011 to date.

Defendants objected to producing any documents responsive to this request, as it sought information beyond the scope permitted by Rule 26(c):

> Defendants object to this Request on the grounds that it is overly broad and seeks
> documents that are neither relevant nor reasonably calculated to lead to the
> discovery of admissible evidence to the extent it seeks documents "relating to . . .
> policies concerning employee suicide" that are not limited to the subject matter of
> the claims as narrowed by this Court in its March 29, 201[3] Order. Defendants
> will not produce documents responsive to this Request.

The parties met and conferred about this and other discovery disputes on November 15, 2013. Defendants stated their position that Request 23 did not request documents that were "relevant to any party's claim or defense," as required by Federal Rule of Civil Procedure 26; that the Request was baseless, improper, and made solely for the purposes of harassment; and that Request 23 itself (not to mention any responsive production) sought the most sensitive type of

2

employee data possible, and thus its production could likely violate French privacy laws. Defendants further noted that Plaintiffs' request for such sensitive personal data was directly at odds with Plaintiffs' General Objection No. 5 to Defendants' First Set of Interrogatories, which Plaintiffs cited as grounds for their complete refusal to respond to Defendants' interrogatories seeking even the names of potential witnesses located in France and that Plaintiffs could not fairly maintain such contradictory positions.

Notwithstanding the foregoing, Plaintiffs insisted that the suicide could conceivably have related to the claims and defenses regarding the RadioGaga project and Transeo's theft of funds. When asked to provide any evidence of that, Plaintiffs' counsel was unable or unwilling to do so.

Defendants have represented to Plaintiffs that all documents concerning the RadioGaga project and Transeo's theft of funds would be produced in response to Plaintiffs' requests for documents concerning those subjects and that, therefore, Request 23 was duplicative (or, that the motivation Plaintiffs offered for the request was untrue). Since Plaintiffs failed to provide any proper justification for Request 23, Defendants stated that documents related solely to any employee suicide would not be produced.

### *A Protective Order Against Request 23 Should Be Issued Under Rule 26(c)*

"[A]ccording the discovery rules liberal treatment does not license opposing counsel to discover anything and everything. Limitations are imposed on discovery sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992). Those limitations are imposed through Rule 26(c), which "allows for the crafting o[f] appropriate relief, including prohibiting the disclosure or discovery altogether." *Uto v. Job Site Servs. Inc.*, 269 F.R.D. 209, 211 (E.D.N.Y. 2010). "[T]he trial court has broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Id.*

The Southern District of New York applies a balancing test to determine whether a protective order is appropriate. "Where a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies, the discovering party will be required to demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would cause either the other party or the interests cited by it." *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) (quotation omitted). A protective order will be issued if the requesting party can show "good cause;" the requesting party is not required to demonstrate "specific examples or articulated reasoning" of harm. *Topo v. Dhir*, 210 F.R.D. 76, 77-78 (S.D.N.Y. 2002).

In this case, the disclosure of information relating to "policies concerning employee suicide" and "investigations into any employee suicides" would both cause harm to NHI, Intego, and their employees and "thwart desirable social policies." *Mitchell*, 227 F.R.D. at 245. Furthermore, prohibiting discovery into such issues would cause no injury to Plaintiffs, because the information is not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). As such, a protective order prohibiting the discovery sought by Plaintiffs' Request 23 is clearly justified.

### *Defendants Have Conferred With Plaintiffs in Good Faith Regarding Request 23*

As required by Federal Rule of Civil Procedure 26(c), Defendants certify that at the parties' November 15, 2013 meet and confer, Defendants in good faith conferred with the Plaintiffs in an effort to resolve this dispute without Court action. However, that meet and confer failed to resolve the issue, and Defendants now request that this Court issue a protective order.

### *NHI, Intego and their Employees Would Be Harmed by the Requested Discovery*

Information regarding the suicide of any employee is, by its very nature, intensely personal, tragic, and upsetting. Disclosure of such information has enormous potential to cause hurt, harm, and distress, especially to those who knew the deceased employee, including his family and colleagues at Intego. Plaintiffs' Request 23 explicitly requests "[d]ocuments relating to . . . investigations into any employee suicides," which could involve disclosure of the details of these events without any nexus to either parties' remaining claims or defenses.[1]

Courts have recognized that the confidential information of employees deserves special protection, especially when those employees "are not parties to th[e] lawsuits, but rather are private individuals with legitimate privacy concerns." *Burke v. Ability Ins. Co.*, No. CIV-12-4051, 2013 WL 842512, at *6 (March 6, 2013 D.S.D.). Indeed, "[t]he court generally regards personnel files of employees to be confidential by their nature . . . [as s]uch files commonly contain addresses, phone numbers, income information, medical histories, employment discipline, criminal records, and other sensitive, personal information having little or no relevancy to the issues in litigation. . . . The files could contain embarrassing material. By definition they contain confidential material. Justice requires protection against wide dissemination of such confidential, personal information." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 73 (S.D.N.Y. 2010) (imposing confidentiality upon employee personnel files in employment discrimination action); *see also Uto*, 269 F.R.D. at 211-12 (barring inquiry into plaintiffs' immigration statuses or social security numbers); *Topo*, 210 F.R.D. at 77-78 (barring inquiry into plaintiff's immigration status).

In the instant case, the information sought is much more personal than immigration statuses, social security numbers, criminal records, or medical histories. Plaintiffs seek to exploit Rule 26 to obtain information about the manner and circumstances of a tragic and unfortunate death. It is beyond dispute that "[r]evelation of such information could cause economic or emotional harm." *Duling*, 266 F.R.D. at 73. As such, "[j]ustice requires protection." *Id.*

---

[1] Furthermore, while Defendants do not agree that French privacy laws operate to foreclose discovery in the courts of the United States, Plaintiffs for their part have refused to provide even minimal discovery by claiming that to do so would violate French laws that bar the disclosure of sensitive information. Defendants note that here—somehow—Plaintiffs do not believe that those same French laws bar the disclosure of the documents that are the subject of Request 23—although these documents would seem to be the very definition of personal, sensitive, and private information.

4

### *A Protective Order Would Cause Plaintiffs No Harm Because the Information Is Irrelevant*

To overcome a showing that "disclosure of [the] requested information could cause injury to [Defendants] or otherwise thwart desirable social policies," Plaintiffs must "demonstrate that [their] need for the information, and the harm that [they] would suffer . . . outweigh the injury that disclosure would cause." *Mitchell*, 227 F.R.D. at 245. In this case, Plaintiffs cannot make that showing because they will receive all relevant discovery pursuant to their other requests, and any information relating solely to the employee's death is, by definition, irrelevant.

The Federal Rules of Civil Procedure allow for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant evidence is defined as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence," if "the fact is of consequence in determining the action." Fed. R. Evid. 401. The disclosures requested by Request 23—"[d]ocuments relating to NHI or Intego policies concerning employee suicide"—do not make it any "more or less probable" that Bessemer breached its contract with Transeo, that the Board failed to adequately consider the alleged AVG offer, or that the directors falsified documents. Even if, as Plaintiffs claim without any evidentiary support, this Intego employee's decision to take his life was in any way influenced by Mr. Marteau's termination (although Defendants have no reason to believe it was), that sad fact would be legally irrelevant to the issues in this case.

Unsurprisingly, when pressed at the meet and confer, Plaintiffs were unable to articulate any justification for the relevance of these documents, except that an "investigation[] into an[] employee suicide[]" might have uncovered facts related to Defendants' counterclaims. However, as Defendants represented on the call, such a justification made Plaintiffs' request duplicative—documents related to the counterclaims would already be produced in response to Plaintiffs' other requests. Moreover, Defendants represented that no documents responsive to Plaintiffs' other requests would be withheld on the basis of Defendants' objection to Request 23.

Having assured Plaintiffs that Defendants' production will include documents relevant to the counterclaims, even if they touch on the issue of employee suicide, Defendants see no other way in which Request 23 is relevant to "any party's claim or defense" in this case. However, even if the Request was for relevant information, Plaintiffs must prove that their need "outweigh[s]" the harm to Defendants. *See Mitchell*, 227 F.R.D. at 245. Given the extremely sensitive nature of the information requested, any slight harm to Plaintiffs cannot be said to outweigh that to Defendants. As such, the protective order should be granted. *See id.* at 247-48.

Very truly yours,

/s/ Andrew M. Berdon

Andrew M. Berdon

cc:     Counsel of Record

5